## FRED W. ALLNUTT, INC. *v.* COMMISSIONER OF LABOR AND INDUSTRY

[No. 2, September Term, 1980.]

*Decided November 10, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON, and RODOWSKY, JJ.

*James L. Mayer,* with whom were *Richard B. Talkin* and *Talkin & Abramson* on the brief, for appellant.

*Leonard C. Redmond, III, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Alma L. Borenstein, Assistant Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

We granted certiorari in this case to determine whether a District Court's order denying a motion to quash an administrative search warrant constitutes a final judgment appealable under Maryland Code (1974, 1980 Repl. Vol.) § 12-401 (a) of the Courts and Judicial Proceedings Article.

By ch. 59 of the Acts of 1973, the General Assembly enacted the Maryland Occupational Safety and Health Act (MOSHA), now codified as Maryland Code (1957, 1979 Repl. Vol., 1980 Cum. Supp.), Art. 89, §§ 28-49C. The intent and purpose of the Act, as set forth in § 28 (c), is "to assure as far as possible every working man and woman in the State of Maryland safe and healthful working conditions." The Commissioner of Labor and Industry is charged with the responsibility of administering the provisions of the Act. Section 35 (a) authorizes the Commissioner or his representatives:

"to enter without delay and at reasonable times any factory, plant, establishment, construction site or

other area, work place, place of employment, or environment where work is performed by an employee of an employer, to inspect and investigate any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, agent or employee."

By ch. 443 of the Acts of 1978, codified as § 2A of Art. 89, an investigator or inspector of the Division of Labor and Industry [1] is authorized, in connection with inspections under § 35 (a), to apply "to the District Court for an administrative search warrant under the following conditions:

(1) He is authorized or required by law to make an inspection of certain premises or property in the State;

(2) He seeks access to such premises or property for the purpose of making an inspection; and

(3) He is denied access after making a proper request for access of the owner, lessee, tenant, or other person in charge of the premises or property.

(b) A judge of the District Court may issue an administrative search warrant if the application specifies the nature, scope, and purpose of the inspection to be performed by the applicant and upon a showing that:

(1) The applicant is authorized or required by law to make the inspection;

(2) The applicant was denied access to the premises or property after having made a proper request for access at a reasonable time;

(3) The application is approved by the Attorney General; and

(4) The inspection is sought for safety or health related purposes."

---

1. The Division is a part of the State Department of Licensing and Regulation; the Division's head is the Commissioner of Labor and Industry.

On September 24, 1979, a Division inspector attempted to inspect the headquarters and maintenance shop of Fred W. Allnutt, Inc. (Allnutt). Allnutt's president refused to consent to the inspection, and the inspector applied for an administrative search warrant pursuant to § 2A. The application for the warrant recited that entry to the premises was for the purpose of inspecting and investigating "the safety and health conditions of said workplace or premises assuring that the employer ... is furnishing to its employees ... a place of employment ... free from recognized hazards that are causing or are likely to cause death or serious physical injuries to its employees" and to determine compliance with the provisions of MOSHA. In addition to containing the requisite statutory recitals, the application stated that the inspection was based upon "a general administrative plan" for the enforcement of MOSHA requiring "general schedule inspections and investigations carried out in accordance with criteria based upon accident experience and number of employees exposed in particular industries." The application further recited that Allnutt was "part of an industry that has a higher ratio of accidents in comparison to other industries." Allnutt's "compliance history" was appended to the application for the warrant.

Judge Raymond J. Kane, Jr. of the District Court for Howard County issued the administrative search warrant on September 24. Allnutt filed a motion to quash the warrant in the District Court, claiming, among other things, that it was issued in violation of the Fourth Amendment to the federal constitution and Article 26 of the Maryland Declaration of Rights. The motion was denied and Allnutt appealed to the Circuit Court for Howard County. The Commissioner filed a motion in the circuit court raising preliminary objections to the appeal, contending that the District Court's denial of Allnutt's motion to quash the warrant was not an appealable final order. The circuit court agreed and dismissed Allnutt's appeal, following which we granted certiorari.

Allnutt contends that the denial of its motion to quash was an appealable final order because under § 2A the District

Court had jurisdiction only over matters concerning the issuance of the warrant, and once it decided that the warrant would continue in effect, nothing remained to be done by the court. In addition, Allnutt argues that the refusal to grant the motion was a denial of an absolute constitutional right and was therefore immediately appealable. Appellant also suggests that even if the denial of the motion was not a final judgment, the District Court's action was subject to review under the collateral order doctrine. Regarding Art. 89, §§ 2A and 35, appellant argues that § 35 violates both the Fourth Amendment to the United States Constitution and Article 26 of the Maryland Declaration of Rights because it permits nonconsensual warrantless searches of private premises. These sections violate the same constitutional provisions, according to Allnutt, because they permit searches that are not based upon probable cause. Allnutt maintains that § 2A is also defective because it is a "special law" violative of § 33 of Art. III of the Maryland Constitution. Finally, appellant challenges the constitutionality of the search warrant issued in the instant case on the ground that (1) the application did not set forth sufficient facts to show probable cause, (2) the inspector was allowed to perform judicial functions in violation of the separation of powers provisions of the Maryland Constitution, (3) the warrant did not contain a specific description of the areas to be searched or the items to be seized, and (4) the warrant exceeded the scope of the statutory authority under which it was issued.[2]

The Commissioner argues that because the District Court's order denying the motion to quash the search warrant did not finally settle and conclude the rights involved in the action between Allnutt and himself, it was an interlocutory rather than a final appealable order. The Commissioner also contends that the District Court's action is not properly reviewable under the collateral order doc-

---

**2.** Allnutt limited its certiorari petition to questions involving the appealability of the District Court's order denying the motion to quash. Our grant of certiorari was so limited and accordingly the other issues raised by Allnutt in its brief are not properly before us. *See* Maryland Rule 813 a.

trine. He further argues that §§ 2A and 35, taken together, provide adequate safeguards against unreasonable searches and seizures. Finally, the Commissioner denies that the warrant in this case was either lacking in specificity or exceeded the statutory authority under which it was issued.

## I

Section 12-401 (a) of the Courts Article authorizes an appeal "from a final judgment entered in the District Court." [3] A "final judgment" is defined in § 12-101 (f) of the Courts Article as:

> "a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken."

We observed in *Warren v. State,* 281 Md. 179, 377 A.2d 1169 (1977), involving an appeal from the District Court, that § 12-101 (f) does not specify what is an appealable final judgment but leaves that determination to the case law. In general, the cases hold that a judgment or order of a court is appealable if it is so final as to deny the appellant the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding. *See Peat & Co. v. Los Angeles Rams,* 284 Md. 86, 394 A.2d 801 (1978); *Warren v. State, supra,* 281 Md. at 183; *D. C. Transit Systems v. S.R.C.,* 259 Md. 675, 270 A.2d 793 (1970); *Concannon v. State Roads Comm.,* 230 Md. 118, 186 A.2d 220 (1962).

Section 2A of Art. 89 provides for the issuance of an administrative search warrant only if certain prescribed conditions are met. The District Court's power comes exclusively from § 2A, and the court only has jurisdiction

---

**3.** With an exception not here pertinent, the appeal is taken to the circuit court of the county in which the judgment was entered; in Baltimore City the appeal in civil cases is to the Baltimore City Court, and in criminal cases to the Criminal Court of Baltimore. *See* § 12-403 of the Courts Article.

either to issue the search warrant or deny the warrant application. Thus, once Judge Kane had issued the warrant and denied Allnutt's motion to quash, nothing remained before the court. Consequently, the District Court's order was appealable as a final judgment under § 12-401 (a) of the Courts Article, and the circuit court was in error in dismissing Allnutt's appeal.

An analogous situation was involved in *Matter of Restland Memorial Park,* 540 F.2d 626 (3rd Cir. 1976), a case arising under the federal Occupational Safety and Health Act (OSHA), 29 U.S.C. §§ 651-678 (1970). There, an inspector who had been refused entry to the Restland Cemetery applied to a federal district court for an inspection warrant. The warrant was issued, and Restland filed a motion to quash after again refusing to admit the inspector. The district court denied the motion and Restland appealed. The appellate court held that it had jurisdiction to hear the appeal, stating (540 F.2d at 627 n. 3):

> "The present action is independent of, although ancillary to, any enforcement proceeding that may subsequently be pursued under OSHA. The order of the district court refusing to quash the warrant provides ' "a final and indisputable basis of action", as between the [agency] and the [cemetery] . . . .' *ICC v. Brimson,* 154 U.S. 447, 487, 14 S.Ct. 1125, 1137, 38 L.Ed. 1047 (1894). The matter reverts to the processes of the Department of Labor and there is nothing further for the district court to do."

A similar result was reached in *Babcock and Wilcox Co. v. Marshall,* 610 F.2d 1128, 1131 (3rd Cir. 1979), in which the court held that it had jurisdiction to hear the appeal of a denial of a motion to quash an inspection warrant.

## II

While we shall remand the case to the circuit court for consideration of the merits of the appeal, it may be of some benefit to briefly review the basic law respecting the applica-

tion of Fourth Amendment principles to administrative search warrants.

In *Frank v. Maryland,* 359 U.S. 360, 79 S. Ct. 804, 3 L. Ed. 2d 877 (1959), the Supreme Court considered whether the Fourth Amendment is applicable to administrative searches. Frank had been arrested and fined, as prescribed by the Baltimore City Code, for refusing to admit a Health Department inspector who sought to inspect his private dwelling for suspected Code violations. On appeal, Frank argued that his conviction for refusing to permit a warrantless search of his home was prohibited by the Fourth Amendment. The Supreme Court disagreed, holding that the Fourth Amendment was not intended to apply to administrative searches. Justice Douglas, dissenting, claimed that "[t]he Court misreads history when it relates the Fourth Amendment primarily to searches for evidence to be used in criminal prosecutions." 359 U.S. at 376.

Justice Douglas' view was adopted by the Court in the companion cases of *Camara v. Municipal Court,* 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967) and *See v. City of Seattle,* 387 U.S. 541, 87 S. Ct. 1737, 18 L. Ed. 2d 943 (1967). Camara had refused to allow a housing inspector to enter his apartment for the purpose of conducting an inspection because the inspector did not have a search warrant. The municipal code provided that refusal to admit a housing inspector was a misdemeanor, and Camara was subsequently arrested. He filed a petition with the Supreme Court for a writ of prohibition after his demurrer to the criminal complaint was denied. At the outset, the Court observed that

> "one governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." 387 U.S. at 528-29.

In rejecting the argument that the statute authorizing the inspection provided adequate safeguards against

unreasonable searches and seizures, and that a warrant procedure would provide no additional protection, the Court noted that the effect of the statute was to vest in individual inspectors the almost absolute discretion to invade private property. The Court indicated that the exercise of this kind of discretion was precisely what the warrant requirement was intended to prevent. It said:

> "We simply cannot say that the protections provided by the warrant procedure are not needed in this context; broad statutory safeguards are no substitute for individualized review . . . ." *Id.* at 533.

The Court said it was not clear that the governmental purpose behind such administrative searches would be frustrated if they were subject to the protections of the Fourth Amendment. The Court concluded that some kind of warrant procedure was required and it undertook to consider the degree of Fourth Amendment protection applicable to administrative searches.

Camara argued that an administrative warrant should be issued only upon a showing that the inspector had probable cause to believe that a violation of the housing code existed within the particular dwelling to be searched. The Court rejected this contention. It said that to meet constitutional requirements a search must be "reasonable" within the meaning of the Fourth Amendment. A warrantless administrative search of Camara's apartment was deemed by the Court to be inherently unreasonable, but it did not clearly indicate what showing of probable cause would comply with the reasonableness standard. The Court observed that a balancing of the need to search with the resulting invasion of privacy would be necessary in determining whether a search was reasonable. It suggested that

> " 'probable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling." *Id.* at 538.

*See v. City of Seattle, supra,* involved the attempted inspection of a commercial warehouse by the Seattle Fire Department. The owner of the warehouse refused to permit the inspection because the inspector did not have a warrant. He was convicted of a misdemeanor as a result of this refusal and he challenged the validity of his conviction on Fourth Amendment grounds. The Court held that

> "the basic component of a reasonable search under the Fourth Amendment — that it not be enforced without a suitable warrant procedure — is applicable in this context, as in others, to business as well as to residential premises." 387 U.S. at 546.

The Court made the following observation concerning the requisite amount of probable cause: "The agency's particular demand for access will of course be measured, in terms of probable cause to issue a warrant, against a flexible standard of reasonableness that takes into account the public need for effective enforcement of the particular regulation involved." *Id.* at 545. As in *Camara,* it was clear that probable cause in the criminal sense was not a constitutional requirement. In addition, the Court envisioned a distinction between inspections of residential and commercial premises. It said: "[w]e do not in any way imply that business premises may not reasonably be inspected in many more situations than private homes . . . ." *Id.* at 545-46.

The *Camara* and *See* decisions were followed by *Colonnade Corp. v. United States,* 397 U.S. 72, 90 S. Ct. 774, 25 L. Ed. 2d 60 (1970), and *United States v. Biswell,* 406 U.S. 311, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972). In both *Colonnade* and *Biswell,* the Court recognized exceptions to the warrant requirement of the Fourth Amendment. In *Colonnade,* agents from the Alcohol and Tobacco Tax Division of the Internal Revenue Service were refused permission to inspect Colonnade's storeroom because they did not have a warrant. The agents broke into the storeroom and seized liquor there stored. Colonnade brought suit to have the liquor returned and to have it suppressed as evidence. Although the Supreme Court ultimately decided the case in Colonnade's

favor, it did so on the ground that the applicable statute did not authorize forcible entries. The statute did permit the imposition of fines upon licensees, such as Colonnade, who refused to permit warrantless inspections of their premises. The Court found this to be constitutional, saying that *See, supra,* was inapplicable. The apparent reason for this ruling was the liquor industry's long history of "close supervision and inspection." 397 U.S. at 77.

The retail firearms industry was the subject of the Court's inquiry in *United States v. Biswell, supra,* Biswell, who had a federal license to deal in sporting weapons, allowed a Federal Treasury Agent to inspect his locked storeroom after the agent showed him a copy of the statute that authorized warrantless searches. In discussing Biswell's conviction, which resulted from the seizure of illegal weapons found during the search, the Supreme Court said:

> "In the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute." 406 U.S. at 315.

In holding that the warrantless search was reasonable, the Court relied heavily on the extensive governmental regulation of the firearms industry and the need for frequent, unannounced inspections to insure effective regulation. The Court observed:

> "Federal regulation of the interstate traffic in firearms is not as deeply rooted in history as is governmental control of the liquor industry, but close scrutiny of this traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders." *Id.* at 315.

> "It is also apparent that if the law is to be properly enforced and inspection made effective, inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment." *Id.* at 316.

Finally, the Court noted that when a firearms dealer "chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection." *Id.*

In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978), the Court considered the validity of warrantless, nonconsensual administrative searches authorized by § 8 (a) of the federal Occuational Safety and Health Act (OSHA), codified as 29 U.S.C. § 657 (a).[4] Because of the marked similarity between the provisions of OSHA and its Maryland counterpart, MOSHA, *see J. I. Hass Co. v. Dep't of Lic. and Reg.*, 275 Md. 321, 340 A.2d 255 (1975), *Barlow's* is of crucial importance in passing upon the constitutionality of inspection warrants issued in pursuance of §§ 2A and 35 of the Maryland Law.

In the *Barlow's* case, an OSHA inspector sought to inspect Barlow's business premises for possible safety hazards and violations of OSHA regulations. Barlow's president refused to permit the inspection because the inspector lacked a search warrant. The Secretary of Labor subsequently applied to a federal district court for an order compelling Barlow's to submit to the inspection. The order was issued, but Barlow's again refused to admit the inspector and sought injunctive relief against the warrantless searches allegedly permitted by OSHA. A three-judge federal panel found that the statutory

---

4. Section 657 (a) provides:

"(a) In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized —

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee."

authorization for warrantless searches was unconstitutional and enjoined searches or inspections authorized by § 657 (a). The issue before the Supreme Court was whether warrantless, nonconsensual OSHA searches were reasonable under the Fourth Amendment. The Court began by reaffirming the principle that warrantless searches of commercial premises as well as dwellings generally are unreasonable under the Fourth Amendment, whether the purpose of the investigation is civil or criminal. It held that unless some recognized exception to the warrant requirement was applicable, a warrant was required to conduct the inspection of Barlow's premises. The Court considered but rejected the argument that OSHA searches should be excepted from the warrant requirement under the *Colonnade-Biswell* exceptions for closely regulated industries — an argument grounded upon the relatively long history of minimum wage and maximum hours requirements imposed upon many industries by the government. The Court said: "The element that distinguishes [the liquor and firearms] enterprises from ordinary businesses is a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware." 436 U.S. at 313. Entering into a business enterprise with the knowledge that wage and hour controls would be imposed and enforced could not — the Court indicated — be construed as consent by an employer to enforcement of the extensive OSHA regulations through warrantless searches. Nor did the Court find merit in the double-barreled argument that warrantless OSHA searches were reasonable under the Fourth Amendment because they provided the only effective means of enforcement and that a balancing of the public interest in safe working places with the minimal amount of additional protection that would be afforded industry under a warrant procedure weighed heavily in favor of the public interest. The Court said it was "unconvinced . . . that requiring warrants to inspect will impose serious burdens on the inspection system or the courts, will prevent inspections necessary to enforce the statute, or will make them less effective." *Id.* at 316. Despite the

additional administrative burdens that would be caused by the warrant requirement, the Court concluded that the protection thereby afforded to an employer would be substantial. It said:

"The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search. A warrant, by contrast, would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria. Also, a warrant would then and there advise the owner of the scope and objects of the search, beyond which limits the inspector is not expected to proceed." *Id.* at 323.

Once it had decided that warrantless OSHA searches were not within any recognized exception to the warrant requirement of the Fourth Amendment and were therefore unreasonable, the Court discussed what showing of probable cause would be sufficient to justify the issuance of an inspection warrant. The Court reaffirmed its position in the *Camara* and *See* cases that probable cause in the criminal sense was not required:

"Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular

[establishment].' *Camara v. Municipal Court,* 387 U.S., at 538. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights. We doubt that the consumption of enforcement energies in the obtaining of such warrants will exceed manageable proportions." *Id.* at 320-21 (footnotes omitted).

The Court concluded that OSHA was unconstitutional "insofar as it purports to authorize inspections without warrant or its equivalent." *Id.* at 325. In a final footnote the Court remarked that the Secretary had refused to rely on the possibility that the process issued by the district court was the functional equivalent of a warrant, issued upon an appropriate showing of probable cause, and therefore reasonable under the Fourth Amendment. The Court said: "if the process obtained here, or obtained in other cases under revised regulations, would satisfy the Fourth Amendment, there would be no occasion for enjoining the inspections authorized by [§ 657 (a)]." *Id.* at 325 n. 23. Thus, the *Barlow's* case indicates that OSHA searches conducted under the authority of a warrant issued by a court pursuant to a showing of the requisite amount of probable cause would be constitutional.

That a nonconsensual warrantless search undertaken in pursuance of § 35 of MOSHA would be unconstitutional under *Barlow's* is clear. Section 35, however, considered in conjunction with § 2A, contemplates that where the inspector is denied entry, an administrative search warrant will be obtained. Indeed, the regulations promulgated by the Commissioner, pursuant to authority vested in him by § 31 of MOSHA, appear to require this procedure. *See* Comar 9.12.31.03B, which provides that upon an employer's refusal

to permit an inspection, the inspector "shall" terminate the inspection, determine the reason for the refusal, and report the refusal to his supervisor. The Commissioner is then required by the regulation to "promptly take appropriate action, including compulsory process, if necessary." The "compulsory process" referred to in the regulation would appear to be the warrant procedure prescribed in § 2A.[5] Thus, the regulation would seem to mandate the issuance of an administrative warrant as a prerequisite to nonconsensual administrative searches.

In view of *Barlow's*, it is plain that MOSHA searches conducted with a valid administrative warrant would not be unreasonable under the Fourth Amendment. Federal cases decided since *Barlow's* have upheld the constitutionality of § 657 (a), requiring only that nonconsensual OSHA searches be conducted pursuant to a valid warrant. *See Plum Creek Lumber Co. v. Hutton,* 608 F.2d 1283 (9th Cir. 1979); *Blocksom & Co. v. Marshall,* 582 F.2d 1122 (7th Cir. 1978); *Marshall v. Pool Offshore Co.,* 467 F. Supp. 978 (W.D. La. 1979); *Marshall v. Weyerhaeuser Co.,* 456 F. Supp. 474 (D.N.J. 1978).

Whether an administrative search warrant satisfies the constitutional requirement of probable cause is, of course, another matter. As previously outlined, § 2A of Art. 89 enumerates the conditions under which the District Court is authorized to issue such a warrant; among other requirements, the application must specify the nature and scope of the proposed inspection and indicate that the warrant is sought for safety or health related purposes. Whether § 2A permits the issuance of inspection warrants not based upon probable cause is not, under *Barlow's,* the test of the *warrant's* constitutionality; rather, as stated in *Barlow's,* the test, followed by the federal courts, is whether

---

5. Congress did not amend 29 U.S.C. § 657 (a), in response to the *Barlow's* decision. Changes were made, however, in the regulation dealing with objections to inspections. The relevant regulation now specifies that the compulsory process that may be obtained by the Secretary of Labor includes *ex parte* application for an inspection warrant. 29 C.F.R. § 1903.4 (d). OSHA does not contain any section that is comparable to Art. 89, § 2A.

the warrant was in fact issued upon a proper showing of probable cause. *See Rothstein, OSHA Inspections After Marshall v. Barlow's, Inc.,* 1979 Duke L.J. 63.

As we have indicated, *Barlow's* affords guidance as to the showing of probable cause which is constitutionally essential to justify the issuance of an OSHA inspection warrant, *i.e.,* probable cause may be based "not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment].' " 436 U.S. at 320. The Court explained that "[a] warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources ... would protect an employer's Fourth Amendment rights." *Id.* at 321. Probable cause in the criminal sense is thus not required. Nor is there a need to demonstrate the existence of probable cause to believe that there is an existing OSHA violation on the premises.[6]

The federal cases dealing with administrative probable cause usually have concerned warrant applications prompted by either the interpretation of statistical data (general schedule inspections) or specific employee complaints. Most of the decisions involving general schedule inspections have interpreted *Barlow's* as requiring magistrates to make two findings before issuing an administrative search warrant: (1) that a reasonable legislative or administrative inspection program exists and (2) that the proposed inspection comes within that program. In *Reynolds Metals Co. v. Secretary of Labor,* 442 F. Supp. 195 (W.D. Va. 1977), the court explained that the following classifications are given to OSHA inspections: imminent danger situations, fatality and catastrophe investigations, employee complaints or follow-up inspections, and general schedule inspections. An OSHA compliance officer seeking

---

6. *See* Note, *Administrative Searches and the Fourth Amendment: An Alternative to the Warrant Requirement,* 64 Cornell L. Rev. 856 (1979); Note, *Rationalizing Administrative Searches,* 77 Mich. L. Rev. 1291 (1979); 8 U. Balt. L. Rev. 88 (1978).

to conduct a general schedule inspection provided the magistrate with a warrant application that explained in great detail how he had decided to inspect Reynolds. The affidavit revealed and explained the neutral criteria used to select Reynolds and was found sufficient in demonstrating that reasonable administrative standards had been employed in reaching the decision to inspect. The court concluded that a showing of probable cause had been made and that the warrant was properly issued. A similar result was reached in *Matter of Establishment Inspection, Etc.,* 589 F.2d 1335 (7th Cir.), *cert. denied,* 444 U.S. 884, 100 S. Ct. 174, 62 L. Ed. 2d 133 (1979), in which the affidavit failed to explain why the particular company had been selected for a general schedule inspection but did contain references to special inspection plans designed for the foundry industry of which the company was a part. In *Marshall v. Weyerhaeuser Co.,* 456 F. Supp. 474 (D.N.J. 1978), however, the court found that probable cause had not been established because the warrant application did not explain how the plant had been selected for a general schedule inspection from a large number of plants with a similar industrial classification. It said that information "must be presented with each warrant application to show that the administrative standards are being applied to a particular establishment in a neutral manner." *Id.* at 484. *Accord, Matter of Urick Property,* 472 F. Supp. 1193 (W.D. Pa. 1979).

Other federal cases that have dealt with administrative probable cause have reviewed warrant applications sought by inspectors who had received employee complaints of OSHA violations. In several cases the courts have found that probable cause to issue the warrant existed when the warrant application contained "specific evidence of an existing violation," *Barlow's, supra,* 436 U.S. at 320, *i.e.,* the factual basis for the employee's complaint or the written complaint itself, in addition to certain representations by the inspector. *See Burkart Randall Div. of Textron, Inc. v. Marshall,* 625 F.2d 1313 (7th Cir. 1980); *Plum Creek Lumber Co. v. Hutton,* 608 F.2d 1283 (9th Cir. 1979); *Marshall v. W & W Steel Co., Inc.,* 604 F.2d 1322 (10th Cir.

1979). A warrant application has been found insufficient to establish probable cause when the factual basis for the employee complaint was not made part of the application. *See Weyerhaeuser Co. v. Marshall,* 592 F.2d 373 (7th Cir. 1979). Even with such factual allegations, however, at least one court has held that the warrant application must also demonstrate that the inspection is to be made pursuant to a reasonable legislative or administrative plan. *See Marshall v. Pool Offshore Co.,* 467 F. Supp. 978 (W.D. La. 1979). All of these cases have stressed the need for information sufficient to allow a judicial officer to make an independent determination of probable cause, thus avoiding the possibility of acting as a "rubber stamp."

### III

Upon our remand of the present case to the circuit court, the trial judge will consider the merits of Allnutt's appeal. A key issue for determination is whether, in light of *Barlow's* and relevant Supreme Court and Maryland cases, § 2A is unconstitutional as permitting the issuance of MOSHA inspection warrants not based upon probable cause in violation of the Fourth Amendment and Article 26 of the Maryland Declaration of Rights. If the court concludes that § 2A is facially constitutional, it will then be required to assess the averments of the application for the warrant to determine the existence of "probable cause," as that term has been defined by the cases in connection with OSHA and MOSHA type inspections of business establishments for safety or health related purposes.

> *Judgment of the Circuit Court for Howard County dismissing the appeal vacated; case remanded to that court for determination of the merits of the appeal; costs to be paid by the appellee.*