528 A.2d 527

Judith A. CAHILL

v.

MONTGOMERY COUNTY, Maryland, et. al.

No. 1680 Sept. Term, 1986.

Court of Special Appeals of Maryland.

July 16, 1987.

Certiorari Denied Dec. 9, 1987.

C. Christopher Brown (Elizabeth M. Kameen and Brown & Goldstein, on brief), Baltimore, for appellant.

Linda D. Berk, Associate Co. Atty. (Paul A. McGuckian, Co. Atty. and Bruce P. Sherman, Sr. Asst. Co. Atty., on brief), Rockville, for appellees.

Argued before MOYLAN, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This appeal arises out of a civil rights action, filed pursuant to 42 U.S.C. § 1983, in the Circuit Court for Montgomery County by Judith Cahill, appellant, against Montgomery County, Maryland, Thomas B. Ferguson and Laurie A. Roberts, appellees.[1] The complaint alleged that appellant's Fourth Amendment rights had been violated by appellees' entry upon and search of her premises pursuant to an administrative search warrant. Appellant sought compensatory and punitive damages, an injunction against further

---

1. Ferguson and Roberts were sued individually and in their capacities as Director of the Montgomery County Department of Animal Control and Humane Treatment and a Montgomery County Animal Control officer, respectively.

violations of the law, a declaration that appellees' actions were unlawful, and attorney's fees and expenses pursuant to 42 U.S.C. § 1988 [2]. The parties having filed cross-motions for summary judgment, the court granted appellees' motion, entered judgment in their favor, and dismissed appellant's complaint.[2a] From this judgment, appellant appeals, raising the following issues:

1. Did appellees deprive appellant of her Fourth Amendment rights when they applied for an administrative search warrant without probable cause?;

2. Are the policies and customs of Montgomery County consistent with Fourth Amendment requirements?; and

3. Do appellees enjoy an immunity which shields their actions?

For the reasons that follow, we will hold that no probable cause existed for the search of appellant's premises, but that the individual appellees enjoyed a qualified immunity precluding an award of monetary damages. We will also hold that summary judgment was improperly granted in favor of appellee Montgomery County since a dispute of material fact existed as to whether it maintained a policy or

---

**2.** 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act of 1976, provides that "The court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in federal civil rights actions.

**2a.** The court ruled:
  The court finds at this juncture that the County and its employees did not act in an arbitrary or capricious manner and that they acted in all good faith; that they approached the situation based upon an informant's statement, which is the customary usage in our country unfortunately to ferret out problems, crimes or violations of administrative orders, county government regulations; that a search warrant was duly obtained, and they acted accordingly; and that their acts were in good faith. Therefore, the Court feels that the immunity statute as referred to by counsel applies. The defendant's motion for summary judgment as to all parties is granted. The case is dismissed. The other motions would be moot.

custom of initiating search procedures in violation of the Fourth Amendment.[3]

The facts surrounding this appeal may be summarized briefly. Appellant, the President and sole Director of Rescue, Inc., a non-profit, non-stock corporation formed exclusively for charitable and educational purposes, in her corporate capacity, picks up stray or unwanted dogs. The dogs are kept in her home and cared for while attempts are made to place them in private homes. Appellant also owns three dogs in her individual capacity. These dogs are lawfully licensed and are also kept in her home.

In December 1984, appellee Roberts received a complaint from "a confidential reliable informant" that "approximately 40 dogs were being kept on [appellant's] premises." Having learned from the records of the Department of Animal Control and Humane Treatment (the "Department") that only three dogs were licensed at the premises, Roberts posted a Notice of Complaint and Corrective Action on the premises. Later, she gave appellant notice pursuant to § 5–18(b) of the Montgomery County Code [4] of her request to enter and inspect appellant's premises. When that request was refused, Roberts made observations of appellant's property from a public street on two occasions. On those occasions, she saw dogs on the premises which did not fit the description of the dogs licensed at that address.

---

3. At oral argument, appellant conceded that she questioned only the correctness, as opposed to the propriety, of the lower court's grant of summary judgment as to issues 1 and 3. She candidly admitted that as to issue No. 2, even the propriety of the grant of that motion, could be questioned.

4. Section 5–18(b) provides:
   The owner, tenant or other occupant of the premises to which entry is sought shall be given at least twenty-four (24) hours written or oral notice of the time, purpose and scope of the inspection of the premises which shall be during reasonable hours of the day or night.
   Subsection (a) permits entry "upon any private premises when such entry is necessary to discharge the Animal Control officer's responsibility in performing area wide or other inspection necessary to enforce the provisions of this chapter or any regulation adopted pursuant hereto."

Thereafter, Roberts filed in the Circuit Court for Montgomery County a Petition for Order Permitting Entry and supporting affidavit, for the purpose of conducting a physical inspection of appellant's property to determine whether unvaccinated dogs were on the premises in violation of § 5–45 of the Montgomery County Code.[5]

In addition to the information set out above, the affidavit described the premises to be searched and described the confidential informant as a resident of the county and a personal friend of Roberts' for many years who has provided Roberts with accurate information in the past.

Roberts' immediate supervisor and appellee Ferguson were kept fully abreast of the investigation. When Roberts was unable to confirm directly through appellant that the dogs on the premises had been vaccinated, it was Ferguson, who, after consulting with the County Attorney's Office, made the decision to seek an administrative search warrant.

Before authorizing the search, the circuit court held an adversary hearing on appellee's petition for entry. It was learned during the hearing that Roberts was aware that appellant operated Rescue, Inc. out of her home. The hearing also revealed that one of the dogs Roberts observed on the premises had been vaccinated just two days before the hearing. With these exceptions, the information devel-

---

5. Section 5–45 provides in pertinent part:

(a) It shall be unlawful for any person to own, harbor, sell or keep a dog or cat in the county over the age of four (4) months unless such a dog or cat has been vaccinated against rabies. It shall be the responsibility of every dog or cat owner to have all dogs or cats over four (4) months of age owned by him to be continuously protected against contracting rabies. The inability of the owner, within a seven-day period, to provide evidence of a currently valid vaccination shall constitute prima facie evidence that the dog or cat is not vaccinated. The effective period of the various vaccines shall be established by the health officer based on the current practices of veterinary medicine. The animal control officer and the health officer are authorized and directed to issue the owner of an unvaccinated dog or cat a notice of violation of this section. Upon failure of the owner to have his dog or cat vaccinated within seven (7) days after notification, the animal control officer or the health officer may order such dog or cat impounded.

oped at the hearing was cumlative to that contained in the petition for entry and the accompanying affidavit. The court found "probable cause to believe that unvaccinated dogs may be present" on appellant's premises, and, therefore, issued an order authorizing the entry and search.[6] The search uncovered no violations of the animal control laws.

1.

In reviewing the propriety of the lower court's grant of summary judgment, we determine only whether, viewing the pleadings, depositions, answers to interrogatories, admissions, and affidavits, Md.Rule 2–501(e), disputed issues of material fact, or the reasonable inferences deducible therefrom, exist. *Coffey v. Derby Steel Company*, 291 Md. 241, 246, 434 A.2d 564 (1981); *Berkey v. Delia*, 287 Md. 302, 304, 413 A.2d 170 (1980); *May Department Stores Company v. Harryman*, 65 Md.App. 534, 538, 501 A.2d 468 (1985), *aff'd*, 307 Md. 692, 517 A.2d 71 (1987). We neither try the issues presented nor determine their credibility. *Harryman*, 65 Md.App. at 538, 501 A.2d 468. Only if but one inference may be deducible from the undisputed facts will we affirm the granting of a motion for summary judgment. *Smith v. Warbasse*, 71 Md.App. 625, 627, 526 A.2d 991 (1987).

The parties concede that there are no disputed issues of material fact presented by this issue. Although we agree that there are no disputed issue of material fact, we do not agree that summary judgment was properly entered in favor of appellees. On the contrary, we hold that summary judgment should properly have been entered in favor of appellant. Accordingly, we reverse.

■  It is now well-settled that "administrative searches generally require warrants." *Michigan v. Clifford*, 464 U.S. 287, 291, 104 S.Ct. 641, 645, 78 L.Ed.2d 477 (1984). *See*

---

**6.** The search was authorized to take place between the hours of noon on January 9, 1985 and 6:00 p.m. on January 10, 1985. The search, however, took place within a matter of hours after the hearing.

*also Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–13, 98 S.Ct. 1816, 1820–21, 56 L.Ed.2d 305 (1978); *Camara v. Municipal Court*, 387 U.S. 523, 528–29, 534, 87 S.Ct. 1727, 1733, 18 L.Ed.2d 930 (1967); *See v. City of Seattle*, 387 U.S. 541, 543, 545, 87 S.Ct. 1737, 1739, 1740, 18 L.Ed.2d 943 (1967); *Fred W. Allnutt, Inc. v. Commissioner*, 289 Md. 35, 43, 421 A.2d 1360 (1980). Similarly, "privacy interests are especially strong in a private residence." *Michigan v. Clifford*, 464 U.S. at 296–97, 104 S.Ct. at 648. It follows, therefore, that an administrative search of a private residence must comport with Fourth Amendment principles. *Camara*, 387 U.S. at 534, 87 S.Ct. at 1733; *Allnutt*, 289 Md. at 42, 421 A.2d 1360; *See*, 387 U.S. at 546, 87 S.Ct. at 1741. This requires that, before private residential premises may be subjected to an administrative search, a search warrant demonstrating probable cause for the search must be obtained. *See*, 387 U.S. at 545–46, 87 S.Ct. at 1740–41.

■ Concerning the quantum of evidence necessary to establish probable cause, *Barlow's, Inc., supra,* makes clear that probable cause in an administrative context is not the same as that required in a criminal context. *Id.*, 436 U.S. at 320, 98 S.Ct. at 1824. Furthermore, "[f]or purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment].'" *Id.*, quoting *Camara*, 387 U.S. at 538, 87 S.Ct. at 1735. *See also Allnutt, Inc.*, 289 Md. at 51, 421 A.2d 1360. Thus, probable cause for the issuance of an administrative search warrant may be established in at least two ways.[6a]

---

**6a.** Neither *O'Connor v. Ortega*, —— U.S. ——, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987), nor *New York v. Burger*, —— U.S. ——, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), both recently decided by the Supreme Court, is to the contrary. In *O'Connor,* the public employer conducted a warrantless search of its employee's office, desk, and file cabinets. Addressing the issue, "[w]hether probable cause is, an inappro-

■ Appellees did not contend below that they relied upon an area wide inspection, based upon established standards, to justify the search of appellant's home and they do not do so on appeal. Rather, they concede that their petition was based upon specific information, acquired from a confidential informant, that violations existed on appellant's property. Consequently, we must review appellees' petition and the supporting affidavit in light of the information known to them to determine if probable cause for the search existed.

The portions of Officer Roberts' affidavit which are pertinent to the issue of probable cause are:

3. A confidential reliable informant has informed me that approximately 40 dogs were being kept on the

---

priate standard for public employer searches of their employees' offices," —— U.S. at ——, 107 S.Ct. at 1501, the Court held "that public employer intrusions on the constitutionally protected privacy interests of government employees for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances," —— U.S. at ——, 107 S.Ct. at 1494, rather than by the probable cause standard. In reaching this conclusion, however, the Court acknowledged that "[b]alanced against the substantial government interests in the efficient and proper operation of the workplace are the privacy interests of government employees in their place of work which, while not insubstantial, are far less than those found at home or in some other contexts." —— U.S. at ——, 107 S.Ct. at 1502. At issue in *Burger,* was the question, "Whether the warrantless search of an automobile junkyard, conducted pursuant to a statute authorizing such a search, falls within the exception to the warrant requirement for administrative inspections of pervasively regulated industries." —— U.S. at ——, 107 S.Ct. at ——. The Court answered the question in the affirmative, noting that "warrant and probable cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, See, *O'Connor v. Ortega,* —— U.S. at ——, 107 S.Ct. at 1502–03, have lessened application in this context", —— U.S. at ——, 107 S.Ct. at ——; however, it is also recognized that "[a]n expectation of privacy in commercial premises ... is different from, and indeed less than a similar expectation in an individual's home." —— U.S. at ——, 107 S.Ct. at ——. In any event, appellees do not seek to justify the search on the basis that a benevolent society is subject to pervasive regulation or that appellant's premises, as a result of operating the benevolent society, were commercial premises.

premises. The informant has been a personal friend of mine for many years, resides in the County, and has provided me with accurate information in the past.

4. Information contained within records maintained by the Department of Animal Control indicates that there are only three licensed dogs at the premises.

5. On January 7, 1985 at approximately 1500 hours and again on January 8, 1985 at approximately 1200 hours, I observed a number of dogs on the premises which do not match the description of the dogs licensed at the premises.

The only other information received from the informant, as revealed in Roberts' deposition, was that the 40 odd dogs were being kept in cages in appellant's living room; the informant did not report that the dogs were being mistreated or abused, not to mention that they were unvaccinated. Moreover, Roberts' deposition confirms that she was aware that Rescue, Inc., an incorporated benevolent society, which is not required by law to license animals kept on its premises, was operated from appellant's home.

In refutation of appellant's contention that they had insufficient probable cause for a search, appellees proffer the following argument:

The property in question is residential property owned by the Appellant. The Department was aware from its own records that there were only three licensed dogs at that address. From these facts the inference may be drawn that privately—owned dogs were kept at Appellant's residence. Officer Roberts personally observed dogs on the property which did not fit the description of the licensed dogs. From this fact the inference may be drawn that there were unlicensed dogs on the property. While it is true that the animals would not have to be licensed if they belonged to the incorporated benevolent society headed by the Appellant, the animals did have to be licensed if they were owned by the Appellant personally. Since the Department already had knowledge of facts

indicating that Appellant did keep personally-owned dogs at that address, it was reasonable to believe that the dogs seen by Officer Roberts were also personally owned and thus required to be licensed. In any event, the dogs were required to be vaccinated against rabies regardless of whether they belonged to Appellant or to her organization.

While we find this argument creative, we also find it to be without merit. Where probable cause is purported to be based upon specific information of existing violations on specific property, rather than on an area wide inspection pursuant to reasonable legislative or administrative standards, it is axiomatic that the information relied upon must relate to an existing violation on that property. In other words, the information possessed must render probable the conclusion that a violation exists on the premises about which complaint is made. In the context of this case, this means that appellees, to show probable cause, would have had to have possessed information from which it could be concluded that it was probable that unlicensed or unvaccinated dogs were illegally on appellant's premises.

The only information contained in the affidavit or presented at the hearing which tended to establish a violation, was the number of dogs reportedly kept on appellant's premises and the fact that only three dogs were licensed at appellant's residence. Neither of these facts suffices. Appellees knew that appellant operated a non-profit benevolent society for the care of stray dogs and that such a society is not required to license its dogs. Therefore, the probability that unlicensed dogs were illegally on the premises could not be inferred solely from the number of dogs there.

Similarly, the mere keeping of a large number of dogs by a non-profit benevolent society, even though it is required to vaccinate its dogs, does not, without more, tend to establish probable cause for believing that unvaccinated dogs are illegally on the premises. Conspiciously absent from the affidavit, the court hearing, and Roberts' deposition is an allegation that any of the dogs on appellant's premises were

unvaccinated. Moreover, even though it is relevant to a determination of whether § 5–45(a) has been violated,[7] no information regarding the ages of the dogs was presented or even alluded to.

Nor does appellant's ownership of three licensed dogs provide any additional evidentiary support for a finding of probable cause to believe that unvaccinated dogs were illegally on the premises. Because appellant's dogs were licensed, they were, of necessity, vaccinated. An inference that some of the remaining dogs were not is no more probable than that they were. In this regard, we once again note the absence of any information as to the age of any of the dogs on the premises.

We reject appellees' attempt to establish probable cause from inferences drawn from non-violations of the law. Applying the totality of the circumstances test, *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), we hold that the information on which appellees proceeded, even as supplemented by the information presented at the court hearing, did not amount to probable cause sufficient to justify the administrative search of appellant's home.

■ Appellees make the alternative argument, that whether probable cause existed or not, "[t]he doctrine of collateral estoppel ... bars the Appellant from relitigating the issue of probable cause for the search." They proffer, relying upon *Allnutt, Inc., supra,* that the circuit court order authorizing the search was a final, appealable order. When appellant did not appeal that order, the probable cause determination inherent in it became binding upon the parties to the action. Consistent with appellant's rebuttal, we reject this argument.

First, as appellant points out, "[t]he fact issue involved in this case is what factual bases, if any, supported appellees' warrant application, not what supported the circuit court

7. Section 5–45(a) of the Montgomery County Code requires that dogs "over four (4) months of age" be vaccinated.

judge's issuance of a warrant." Thus, the issues which would have been involved on an appeal of the judge's probable cause determination are quite different from those presented in this § 1983 action. Moreover, to hold that the doctrine of collateral estoppel applies in circumstances such as this would significantly undermine the Supreme Court's decision in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

In *Malley,* as a result of a criminal investigation, a State Trooper applied for, and obtained a warrant for the plaintiff's arrest. When the Grand Jury refused to return an indictment against him the plaintiff filed a § 1983 action against the trooper, alleging that his Fourth and Fourteenth Amendment rights had been violated. Although, unlike the instant case, the arrest warrants were obtained in an ex parte proceeding, at which the plaintiff was neither present nor a participant, one of the clear holdings of *Malley* is that state officials may not avoid the consequences of their illegal behavior by invoking the shield of a judicial finding of probable cause. *Id.,* 475 U.S. at 344–346, 106 S.Ct. at 1098–99.

Second, although we acknowledge that *Allnutt, Inc.* does stand for the proposition for which appellees cite it, we believe it to be inapposite. There, an administrative search warrant permitting the search of Allnutt's headquarters and maintenance shop was issued by the District Court of Maryland for Howard County. Allnutt's motion to quash the warrant was denied by the district court and Allnutt appealed to the circuit court, which dismissed the appeal. The Court of Appeals granted certiorari and reversed, holding that the district court order was final and appealable. *Id.,* 289 Md. at 41, 421 A.2d 1360. No where in the case, however, is there a suggestion that, prior to resolution of the issue on appeal, the search warrant had been executed. Here, on the other hand, the search occurred within three hours of the issuance of the warrant. Although it was possible for appellant, prior to the search, to have noted an appeal from the order authorizing the search, unless the

execution of the order were stayed, her appeal would have been moot. A question presented on appeal is moot "if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide." *Attorney General v. A.A. School Bus*, 286 Md. 324, 327, 407 A.2d 749 (1979). *See Mercy Hospital v. Jackson*, 306 Md. 556, 561, 510 A.2d 562 (1986); *Williams v. Williams*, 63 Md. App. 220, 225, 492 A.2d 649 (1985). Such is the situation with regard to the probable cause determination in this case: since the search occurred within hours of the issuance of the search warrant and may not have been stayed even if a request for a stay had been made, appellant had no meaningful opportunity to appeal. Under the circumstances here presented, we hold the doctrine of collateral estoppel to be inapplicable.

2.

In light of our holding that there was no probable cause for the search, it is logical that we next address appellees' immunity defense. Before deciding whether, and to what extent, if any, appellees are entitled to that defense, an observation concerning the scope of any immunity is in order. In her complaint, appellant sought injunctive, declaratory, and monetary relief. The immunity defense affects only the award of monetary relief. *Fort Eustis Books, Inc. v. Beale*, 478 F.Supp. 1170, 1173 (E.D.Va.1979); *Project Release v. Prevost*, 463 F.Supp. 1033, 1036 (E.D.N.Y.1978); *Stanford Dailey v. Zurcher*, 550 F.2d 464, 465 (9th Cir. 1977), *rev'd on other grounds*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). It does not prevent the entry of either injunctive or declaratory relief for violation of constitutional rights by officials, *Project Release, supra*, 463 F.Supp. at 1037; *Maria Santiago v. Corporacion de Renovacion*, 554 F.2d 1210, 1212 (1st Cir.1977). Thus, the result we reach with regard to the immunity defense will not affect appellant's entitlement to injunctive or declaratory relief.

State and local government officials enjoy a "[q]ualified or 'good faith' immunity", *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982) from suit for damages based upon their official acts. *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984); *Harlow,* 457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30; *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978). Qualified immunity means that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. For purposes of the qualified immunity defense, animal control officers are state or local officials. *Allred v. Svarczkopf,* 573 F.2d 1146 (10th Cir.1978). Thus, as applied to the facts of the case *sub judice,* "[appellees] will not be immune if, on an objective basis, it is obvious that no reasonable competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096.

Appellant urges that the grant of summary judgment on the basis of the qualified immunity defense was erroneous because "[a] reasonably well-trained officer in [the appellees'] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Specifically, she asserts that absent from the information upon which appellees acted was even an allegation that violations of the Montgomery County Animal Control Ordinance existed on appellant's property. Rather, and most significant, in her view, is the fact that appellees acted essentially on the basis of the number of dogs reportedly on the premises, and not on the basis of any specific allegation of a violation. Thus, she reasons, the information possessed by appellees clearly did not support probable cause.

Appellees, relying on the facts that they proceeded only after consulting with the County Attorney and that their position was adopted by the court, maintain that they have demonstrated their entitlement to the qualified immunity defense. The argument they made on the merits of the probable cause issue is, of course, critical to their position.

We believe appellees get the better of this argument. Before explaining our reasons, we observe that hindsight renders crystal clear that which is totally indecipherable when viewed by foresight. Furthermore, we point out that, while the act of applying for a search warrant does not necessarily justify the conclusion that the applicant acted objectively reasonably, that he or she did apply for a warrant is a factor which can and should be taken into account when assessing the reasonableness of the applicant's actions.

We do not find the information upon which appellees acted to have been "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984). To be sure, the affidavit contained no explicit allegation of a violation on appellant's premises and, in fact, primarily relied upon the large number of dogs alleged to be there. It did, however, reveal that the premises to be searched was a private residence to which was licensed three dogs and that other dogs were observed on the premises. While the applicant knew appellant operated a benevolent society out of her home and, further, that dogs kept by a benevolent society need not be licensed, it is, as appellees suggest, possible to construct from these facts a facially reasonable argument that probable cause for a search, particularly, in the administrative context, exists. In other words, an officer of reasonable competence could have objectively and reasonably concluded from these facts that probable cause existed. The test of probable cause in an administrative context differs from that in a criminal context, *see Barlow's, Inc., supra*, and whether inferences deducible from the information acted

upon support probable cause and, if so, whether they are sufficient, are matters peculiarly in the province of the judicial officer, not the applicant for the warrant. In addition, that appellees acted with objective reasonableness is supported by their prior consultation with the County Attorney's office and by the fact that they did apply for a warrant.[8] The conclusion we reach is, we believe, consistent with the policy behind the qualified immunity defense: "The need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow*, 457 U.S. at 807, 102 S.Ct. at 2732, quoting *Butz*, 438 U.S. at 506, 98 S.Ct. at 2910.

### 3.

We now turn to appellant's argument that summary judgment was improperly granted in favor of appellee Montgomery County. Recognizing that the County may not be held liable for violations of constitutional rights on the basis of *respondeat superior*, but that it must be shown that the violation occurred as a result of a policy, practice, custom, or usage maintained by the county, *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), appellant argues that appellee Montgomery County maintained a policy or custom of initiating the administrative search process based only upon a complaint that a large number of dogs are present on private premises. She maintains further that, because the statute, pursuant to which an administrative search warrant is authorized, contains no reasonable legislative or administrative standards, the county has, by its own actions, violated her rights.

Appellees, in response, point out that the instant case is the first in which an administrative search warrant to

---

8. Our recognition that *Malley* makes clear that the "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization," *Id.*, 475 U.S. at 345, 106 S.Ct. at 1098, does not require that this factor be disregarded.

enforce the animal control ordinance has been sought or obtained. They reason from this fact that "[t]he Appellant cannot allege a persistent pattern or practice by a Department amounting to a custom or usage sanctioning unconstitutional administrative searches." Moreover, the county states that "[t]he record in this case is totally lacking of any facts which would indicate the existence of any unlawful policy adopted or followed by the Department." Furthermore, the county, contrary to appellant's contention, proffers that Roberts' deposition testimony indicates only that the county's policy is to investigate any citizen complaint received, not to initiate a petition for an administrative search of a home.

Although, in this case, there is no dispute as to the facts and even though "municipal liability may be imposed for a single decision by a municipal policymakers under appropriate circumstances," *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986), summary judgment was improperly granted on this issue. The undisputed facts admit of more than one inference. Appellant, for example, reasonably argues from the remarks made by appellees' counsel at trial and from Roberts' deposition, that the policy of appellee Montgomery County was "to seek access to a home, either voluntarily or by court order, upon any private citizen's report that a number of dogs were being housed on that premises, regardless of whether the complaint indicated evidence of abuse or lack of vaccination." Appellee Montgomery County, on the other hand, relying upon the same undisputed facts, responds that its policy is to investigate all complaints received, not that "every investigation will require a search of the animal owner's premises." As the inferences drawn by both parties are legitimate inferences and neither can be preferred over the other, it follows that grant of summary judgment was improper.

Perhaps of even more fundamental importance is the question whether, in this case, the county could be properly subjected to § 1983 liability on the basis of decisions made

by appellees Ferguson and Roberts. *Pembaur* is instructive on this point. The Supreme Court stated very clearly that:

[n]ot every decision by municipal officers automatically subjects the municipality to Section 1983 liability. Municipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policy making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. *See e.g., Oklahoma City v. Tuttle*, 471 U.S., [808] at 820, 105 S.Ct. [2427] at 2434 [1986]. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official has final policymaking authority is a question of state law. However, like other governmental entities, municipalities often spread policymaking authority among various officers and official bodies. As a result, particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances.... We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *See Tuttle, supra* at 823, 105 S.Ct., at 2436 ("'policy' generally implies a course of action chosen from among various alternatives"). (footnotes omitted)

*Pembaur*, 475 U.S. at 481–484, 106 S.Ct. at 1299–1300. It is thus necessary that a threshold determination be made, that "the decision maker possesses final authority to establish municipal policy with respect to the action" in question. No

such preliminary determination has been made in this case and it is not clear that there is evidence in the record which would permit that determination to have been made. In that regard, we observe that the county attorney's involvement in the process, though commented upon by appellees, must be assessed in this context as well. *See Pembaur*, 475 U.S. at ——, 106 S.Ct. at 1301.

In light of the above, we will remand this case to the Circuit Court for Montgomery County for further proceedings consistent with this opinion.

JUDGMENT REVERSED IN PART AND AFFIRMED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE-THIRD BY APPELLANT AND TWO-THIRDS BY APPELLEE MONTGOMERY COUNTY.