## IN RE: SPECIAL INVESTIGATION NO. 185

[No. 123, September Term, 1981.]

*Decided July 1, 1982.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*M. Albert Figinski*, with whom were *Arnold M. Weiner* and *D. Christopher Ohly* on the brief, for appellant.

*Dale P. Kelberman, Assistant Attorney General*, with whom was *Stephen H. Sachs, Attorney General*, on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court.

Md. Code (1957, 1982 Repl. Vol.), Art. 27, § 592A (a) provides that "[t]he State's attorney may issue a summons for a witness for the purpose of obtaining evidence to prepare an information."[1] In this case we shall hold § 592A does not authorize a summons in order to investigate whether or not a crime has occurred. Rather, the statute, at a minimum, requires that the State's Attorney have probable cause to believe that a crime has taken place which he presently intends to charge by way of a criminal information.

The issue presented here is precipitated by a summons

---

1. Section 592A in its entirety reads:

§ 592A. Summons to obtain evidence to prepare information.

(a) The State's attorney may issue a summons for a witness for the purpose of obtaining evidence to prepare an information. The State's attorney shall report to the court a refusal by a witness to obey the summons and the court may issue a bench warrant for the witness. A witness has the right to have counsel present when responding to a summons and the State's attorney shall advise the witness of that right when the summons is issued.

(b) A witness from whom testimony and evidence is being sought pursuant to this section shall be sworn. If the witness so requests the State's attorney shall cause a record to be made of all testimony and evidence obtained pursuant to the summons.

duces tecum issued by the Attorney General, acting through an Assistant Attorney General assigned to the Medicaid Fraud Control Unit of the Attorney General's Office. Pursuant to Md. Const., art. V, § 3, Acting Governor Blair Lee, III on December 20, 1978 and Governor Harry Hughes on November 21, 1979 had authorized and directed the Attorney General, "acting with full powers, rights and privileges possessed by a State's Attorney, to investigate and, where appropriate, prosecute" violations of criminal laws arising out of, or relating to, the State's Medicaid Program. The appellant in this case is a licensed optometrist. On March 12, 1981 the Attorney General issued a summons duces tecum to the appellant, under the recited authority of § 592A, requiring the production of appellant's records relating to 100 specifically named Medicaid patients. These records were produced. By a letter of April 9, 1981, which referred to the prior agreement of appellant's counsel, the Attorney General requested records relating to 200 additional, specifically named, Medicaid patients. These records were furnished. Then, by summons duces tecum of April 30, 1981, the Attorney General directed the appellant to produce his records of 1733 additional, specifically named, Medicaid patients. Appellant moved to quash.

A summons under § 592A is initially issued directly by a State's Attorney and not by a court at the request of a State's Attorney. Appellant's motion to quash was filed in the Criminal Court of Baltimore and entered on the Miscellaneous Docket as a new filing.

In an opinion of July 24, 1981 the trial court distilled the positions taken before it by the parties. The State argued that "the very fact that the summons is issued by the Medicaid Fraud Control Unit ... on its face, demonstrates the reasonable relationship between the records sought and the investigation." Appellant asserted, *inter alia,* that the summons should be quashed absent "any showing that the State has any reasonable or probable cause to believe that a criminal violation has occurred . . . ." In the trial court's view determination of the reasonable basis for a § 592A summons was to be guided by the standards for investigative sub-

poenas issued by administrative agencies, which were enunciated in *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208, 66 S. Ct. 494, 505, 90 L. Ed. 614, 629 (1946). This is a threefold test which this Court summarized in *Banach v. State Commission on Human Relations*, 277 Md. 502, 506, 356 A.2d 242, 246 (1976) to be: "Whether the inquiry is authorized by statute, the information sought is relevant to the inquiry, and the demand is not too indefinite or overbroad." The trial court ordered the State to submit "an affidavit making a minimal preliminary showing that the records sought . . . are relevant to an investigation being conducted by it and properly within its jurisdiction and are not sought primarily for another purpose."

The State filed such an affidavit. It recited the history of the creation of the Medicaid Fraud Control Unit. It said the State had "received information" that the appellant "was engaged in defrauding the Medical Assistance Program . . . by falsifying information on invoices submitted to the Medical Assistance Program . . . in order to justify payment for services allegedly rendered." The State's affidavit stated that the appellant had been advised at the time of the March 13, 1981 summons that he was the subject of an investigation and that appellant had "suggested that the investigation may have been prompted by former disgruntled employees whose names [appellant] provided at that time." A comparison of the records produced by the appellant with those of the Department of Health and Mental Hygiene "indicated" to the State that "discrepancies of the types suggested by the employees did indeed exist." The State's affidavit concluded that the records sought "are relevant to the investigation now being conducted and that they are sought primarily for this purpose and none other."

On September 3, 1981 the trial court ordered "that the documents enumerated in the Summons Duces Tecum dated April 30, 1981 shall be produced forthwith." Appellant appealed to the Court of Special Appeals.[2] We issued the writ

---

2. Following the order of September 3, 1981 nothing remained before the Criminal Court of Baltimore. Thus the order was appealable as a final

of certiorari on our own motion prior to consideration of the matter by the intermediate appellate court.

The *Oklahoma Press* test for the validity of administrative investigative subpoenas rests in part on the Supreme Court having found a "proper analogy to . . . the grand jury investigation . . . ." *Equitable Trust Co. v. State Commission on Human Relations,* 287 Md. 80, 92, 411 A.2d 86, 93 (1980) (referring to *Oklahoma Press, supra,* 327 U.S. at 209, 66 S. Ct. at 505, 90 L. Ed. at 630). Indeed, in this Court, the State flatly asserts that § 592A "when coupled with the present provisions of Article 27, § 592,[3] [was] intended to provide a means of investigating and charging suspects which paralleled the grand jury process." We do not agree.

judgment. *See* Randall Book Corp. v. State, 49 Md. App. 131, 430 A.2d 624 (1981), applying to a case of this type the principle enunciated in Fred W. Allnutt, Inc. v. Comm'r of Labor and Indus., 289 Md. 35, 421 A.2d 1360 (1980). *Cf. In re* Special Investigation No. 186, 293 Md. 304, 443 A.2d 120 (1982) (appeal entertained without discussion).

**3.** Md. Code (1957, 1982 Repl. Vol.), Art. 27, § 592 reads as follows:

§ 592. Charge by criminal information; right to preliminary hearing.

(a) In all cases involving a felony, other than a felony within the jurisdiction of the District Court, in which the accused has not requested a preliminary hearing within ten days after being informed by the court or court commissioner of the availability of such a hearing, or in all cases in which a preliminary hearing has been held and probable cause to hold the accused has been found, the state's attorney may charge by information.

(b)(1) In any case where the defendant has been charged with a felony, other than a felony within the jurisdiction of the District Court, the defendant shall be advised by the court or court commissioner, at the time of the initial appearance required by the Maryland District Rules, of his right to request a preliminary hearing. The defendant may make that request at the time of the initial appearance or at any time within ten days thereafter. If the defendant fails to request a preliminary hearing within the ten-day period, it is waived.

(2) If the state's attorney elects to charge the accused by criminal information, the right of the defendant to the preliminary hearing is absolute, if he has requested such a hearing as set out above.

(3) If the state's attorney elects to charge the accused by grand jury indictment, the preliminary hearing is not a matter of right to the defendant but may be afforded in the court's discretion. A preliminary hearing is not a matter of right in any other case, but may be afforded in any case in the court's discretion, upon motion of the state's attorney or the defendant.

The circumstances under which a State's Attorney may issue a summons under § 592A are found in the terms of the statute itself. The summons is authorized "for the purpose of obtaining evidence to prepare an information." In order for § 592A to operate, the purpose of the State's Attorney must be more specific than simply to obtain evidence. He may summons for evidence only in order to prepare an information. The statute requires that there be a then present purpose to file an information, and that the object of the summons be evidence that the prosecutor anticipates will enable him to prepare that charging document. Thus, the analogy or parallel to a grand jury summons falls.

> The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate . . . . "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by . . . forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." *Blair v. United States,* 250 U.S. 273, 282[ , 39 S. Ct. 468, 471, 63 L. Ed. 979, 983] (1919). [*United States v. Calandra,* 414 U.S. 338, 343, 94 S. Ct. 613, 617, 38 L. Ed. 2d 561, 568-69 (1974).]

And *see Bartram v. State,* 280 Md. 616, 630-31, 374 A.2d 1144, 1151 (1977). The State's reading of § 592A permits a purely investigatory use of the summons power. As the State would have it, the § 592A subpoena may be utilized whether or not the State's Attorney possesses information sufficient to support a reasonable belief that an offense has been committed at all. That interpretation either reads out of the statute the words, "to prepare an information," or adds, in effect, the words, "if facts might *thereby* be uncovered furnishing probable cause to believe a crime chargeable by information has been committed."

We recognize that § 592A addresses a time prior to the actual filing of an information. We need not, in this case,

speculate on the various situations which might arise in which the State's Attorney would possess sufficient knowledge in order to have a present purpose to file an information, but would desire additional evidence in order to prepare that charging document. We hold only that, in order to utilize § 592A, the State's Attorney must have a then present purpose of filing an information based upon facts which, at a minimum, constitute probable cause to believe that an offense chargeable by information has occurred.[4]

The history of § 592A supports our conclusion. By Ch. 562 of the Acts of 1933, provision was made for a State's Attorney to proceed by information in cases in which a person charged with a misdemeanor made known a desire to plead guilty. See Md. Code (1939), Art. 27, § 637. This statute was substantially amended by Ch. 788 of the Acts of 1945. Under that enactment, a person charged with a misdemeanor or felony, who wished to waive his right to indictment by the grand jury and to seek an immediate trial by the petit jury, could file a petition and suggestion to that effect with the court. Upon that filing the State's Attorney was required "forthwith" to file a criminal information against the accused. The procedure did not apply in Baltimore City or Baltimore County. See Md. Code (1951), Art. 27, § 679. Its apparent purpose was to enable an accused to obtain a disposition of the charges against him more promptly than by waiting for grand jury indictment in those counties where a grand jury was convened only at particular times of the year to consider such matters as had accumulated since the last

---

4. Md. Rule 710 c provides:

c. *Information.*

An offense may be tried on an information if the offense is:

1. A misdemeanor; or

2. A felony within the jurisdiction of the District Court; or

3. Any other felony and lesser included offense, if

(a) Defendant petitions or consents in writing to be charged by information; or

(b) Defendant has been charged with the felony at a preliminary hearing pursuant to Maryland District Rule 727 (Preliminary Hearing) which has resulted in a finding of probable cause; or

(c) Defendant has been charged with the felony as to which he has waived a preliminary hearing.

sitting of a grand jury. In connection with this procedure the statute provided that the "State's Attorney shall have the same power to summons witnesses to his office on a day certain for the purposes of obtaining evidence to prepare said Information as he now possesses to summons witnesses to appear before the grand jury." *Id.*

In the enlargement of Chapter 700 (Criminal Causes) of the Maryland Rules of Procedure proposed in the 20th Report of the Rules Committee, the 1945 enactment, which was then Code (1957), Art. 27, § 592, was used as the source for proposed new Rules 709 and 710. These rules were adopted September 15, 1961, effective January 1, 1962. Md. Rule 710 provided:

Summons for Witness in Aid of Information.

The State's attorney may issue a summons for a witness for the purpose of obtaining evidence to prepare an information. The State's attorney shall report to the court a refusal by a witness to obey such summons and the court may issue a bench warrant for such witness.

Rules 709 [5] and 710 were of statewide application.

---

5. Md. Rule 709 ("Immediate Trial") provided:

   a. *Petition.*

   An accused, including an accused who has prayed a jury trial before a trial magistrate, or who has appealed from a conviction before a trial magistrate, may file with the clerk a petition signed by the accused setting forth that there is a criminal charge pending against him, that he desires to waive his right to action by the grand jury, or that a jury trial was prayed before the trial magistrate, or that the hearing before the magistrate resulted in conviction and appeal, as the case may be, and that he seeks an immediate trial.

   b. *Information by State's Attorney.*

   Upon the filing of a petition pursuant to this Rule, the State's attorney shall immediately file an information against the accused except in a case originating before a trial magistrate which is to be tried upon warrant.

   c. *Time of Trial.*

   An accused who has filed a petition under this Rule shall be tried, without regard to term of court, within such reasonable time as to accord him a speedy trial.

Article 27, § 592 was repealed by Ch. 558 of the Acts of 1963, entitled an Act "to amend or repeal provisions of the Code . . . inconsistent with or superseded by certain of the Maryland Rules of Procedure . . . ."

Rule 710, which had been in effect since January 1, 1962, was deleted by Order of this Court of January 31, 1977, effective July 1, 1977 [6] (4 Md. Reg. 235 (1977)). This deletion arose out of the recommendation contained in the 53rd Report of the Rules Committee (3 Md. Reg. 8-9 (1976)):

> b. *Current Rule 710* (Summons for Witness in Aid of Information).
>
> The Committee recommends that this Rule be deleted and it is not included in the attached proposed Rules in any form. This Rule grew out of the repeal of section 592, Article 27. That section dealt with a known defendant who, after languishing in jail, decided to ask for a speedy trial. After such a request had been made by a defendant, the statute allowed the prosecutor to subpoena a witness in order to prepare an information in lieu of an indictment, which had been waived by the defendant's request for a speedy trial. Upon repeal of the statute Rule 709 was adopted by the Court of Appeals to allow a defendant to request an immediate trial and waive indictment, and Rule 710 was adopted to allow the prosecution to get information upon which to prepare an information.
>
> The Committee fears that the Rule can be subverted by the prosecution to pursue investigations wherein there are no known defendants and individual rights could be ignored without there being any means of protection or defense.
>
> The issues involved in this Rule were fully debated before the whole Rules Committee by Mr. Andrew L. Sonner, representing the State's Attor-

---

**6.** The number of old Rule 710 was utilized for present Rule 710, which deals with "Charging Document-Use."

neys, and the Honorable Alan H. Murrell, representing the defendants.

The Committee resolved that if State's Attorneys were to have the authority conferred by the existing Rule, it should be done by the Legislature.

The General Assembly immediately accepted the invitation to continue "the authority conferred by the existing Rule." It enacted present § 592A by Ch. 708 of the Acts of 1977, effective July 1, 1977.

The first sentence of § 592A (a) continues, *in haec verba,* the first sentence of former Rule 710. This is the provision which defines the scope of the use of the summons power conferred on State's Attorneys. In the instant matter, the State argues that § 592A is an entirely new statute, the interpretation of which should be divorced from the history reviewed above. That argument is unconvincing. By utilizing in the statute which replaced Rule 710 the very words previously used in Rule 710, the General Assembly must have intended the words "to prepare an information" to have the same meaning in the statute as in the predecessor rule. That meaning did not embrace a purely investigatory summons. If the legislature intended so substantial a departure from the prior rule as to make the State's Attorney a one person grand jury, it would seem that language more clearly manifesting that purpose would have been used.[7]

The State also asserts that a reading of § 592A in conjunction with § 592 [8] makes the § 592A summons similar to a grand jury subpoena. Section 592 was enacted in its present form by Ch. 2, § 7A of the Acts of the 1st Special Session of 1973. It gives the State's Attorney an election to charge by information or indictment in a felony case that is not within

---

[7]. The State has not cited, and our research has not disclosed, a statute of any state which confers on the prosecutor the power directly to issue subpoenas for the purpose of conducting his own investigation, which is equivalent to that of a grand jury, but without utilizing grand jury proceedings.

[8]. *See* n.3, *supra.*

District Court jurisdiction, when either the accused waives a preliminary hearing or probable cause has been found at a preliminary hearing. Simply because, in some cases falling within § 592, the preliminary hearing serves the probable cause determination function of grand jury indictment, it in no way follows that the 1977 enactment of § 592A created a purely investigatory subpoena.

Our conclusion that § 592A is not a counterpart of the grand jury subpoena is dispositive of the State's contentions in this case. One of these arguments is that the judgment below should be affirmed because the appellant failed to demonstrate that the requested records were not relevant to an authorized investigation, so that no affidavit should have been ordered at all. Even if we were to assume, *arguendo,* under our construction of § 592A, that a State's Attorney's summons carries a presumption of validity, and also that the burden is on the objecting party to make some preliminary demonstration of possible abuse, any such burden was met in this case. The fact that the State first sought 100, then 200, and then 1733 sets of records justifies an inference that that summons was for investigative purposes and not to prepare a criminal information. Further inquiry by the trial court was permissible.

Continuing to analogize § 592A to the grand jury subpoena, the State says that its affidavit, even if properly required, reveals relevancy to an authorized investigation and the absence of any improper purpose. But the affidavit filed by the State in this case does not aver that the summons was issued in order to prepare an information. The affidavit does not aver in even conclusory fashion the commission of an offense that the prosecutor proposed to charge by information. Without defining the threshold of a showing of the statutory predicate for the use of the § 592A subpoena power, we hold only that it has not been approached on the record in this case. Thus, the motion to quash should have been granted.

Because we decide that § 592A did not authorize the process as used in this case, we do not reach the State's

remaining contention that the records sought are "required" records and that, with respect to such records, appellant was due no *Fourth* Amendment protection.

> *Judgment of the Criminal Court of Baltimore reversed and matter remanded for the entry of an order quashing the summons of April 30, 1981.*
> *Costs to be paid by the Mayor and City Council of Baltimore.*