896 A.2d 304

### ST. JOSEPH MEDICAL CENTER, INC.

v.

### CARDIAC SURGERY ASSOCIATES, P.A., et al.

### No. 64, Sept. Term, 2003.

Court of Appeals of Maryland.

April 12, 2006.

James P. Gillece (Patrick Sheridan of McGuire Woods, on brief), Baltimore, for appellant.

Jerome G. Geraghty, Arnon E. Wiener, Baltimore, brief of Amicus Curiae in support of the Maryland Hospital Ass'n, Inc., for St. Joseph Medical Center, Inc., appellant.

William F. Gately (Howell & Gately), Baltimore; Kathleen McDermott of Blank Rome, LLP, Washington, DC; H. Russell Smouse of Law Offices of Peter G. Angelos, P.C., Baltimore, for appellee.

Kevin F. Arthur (Aron U. Raskas, Jean E. Lewis of Kramon & Graham, P.A., Baltimore), on brief, for appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE, J., Retired, Specially Assigned.

This case involves a challenge to a trial court's discovery order requiring the production of several internal hospital

documents. The documents consist of e-mails, correspondence, letters, and testimony by hospital staff, regarding incidents which staff members believed should be investigated by a medical review committee, *i.e.*, a peer review group which monitors the quality of health services at the hospital. At issue is whether the documents are protected by the medical review committee privilege, which shields records, proceedings and files of such committees from discovery and admissibility in civil actions. We are also presented with the threshold question of whether the trial court's discovery order is appealable by the hospital, known as St. Joseph Medical Center, Inc. We shall hold that the order is appealable by St. Joseph, and we shall, on the merits, reverse the trial court's order.

## I.

On October 17, 2001, Cardiac Surgery Associates, P.A., filed an action in the Circuit Court for Baltimore County against MidAtlantic Cardiovascular Associates, P.A., alleging unfair competition and tortious interference with economic relations in connection with the parties' cardiac surgery practices. Cardiac Surgery and MidAtlantic both employ cardiac surgeons who practice extensively at St. Joseph Medical Center, Inc. St. Joseph, however, is not a party to the unfair competition lawsuit.

Both sides in the unfair competition action sought discovery from St. Joseph by serving upon the hospital notices of deposition and subpoenas *duces tecum*. In response, St. Joseph produced over 29,000 pages of documents. Additionally, St. Joseph produced a privilege log, identifying those documents which it would not produce because, according to St. Joseph, they were covered by certain privileges, including the medical review committee privilege set forth in Maryland Code (1981, 2005 Repl.Vol.), § 1–401(d)(1) of the Health Occupations Article. St. Joseph's assertion of privilege was not challenged by either party during the discovery process.

St. Joseph later learned that 118 documents, which were listed in its privilege log, had been exchanged by the parties

during discovery.[1]  St. Joseph wrote to each of the parties and advised them that the 118 documents in their possession were privileged, that the documents had improperly come into the custody of the parties, and St. Joseph demanded the immediate return of the documents to the hospital.[2]

When the documents were not returned, St. Joseph commenced the present action by filing in the Circuit Court for Baltimore County a motion for a protective order, asserting that the medical review committee privilege protected the 118 documents.  St. Joseph requested the court to disallow the use of those documents at the trial of the unfair competition case and order the parties in that case to return them to the hospital.  MidAtlantic filed a response, consenting to the relief sought by St. Joseph, as it had already returned the one document in its possession.

Cardiac Surgery responded to St. Joseph's motion by arguing that the medical review committee privilege did not apply to any of the documents listed in St. Joseph's privilege log, including the 118 documents which had been produced by the parties in the underlying suit.  Cardiac Surgery further argued that, even if the privilege applied, the allegations of unfair competition in the underlying litigation outweighed any interest St. Joseph had in protecting the documents.  In making this argument, Cardiac Surgery chiefly relied on *Price v. Howard County General Hospital,* 950 F.Supp. 141 (D.Md. 1996).

The Circuit Court granted St. Joseph's motion for a protective order in part and denied it in part.  Initially, the court held that 19 of the 117 documents in Cardiac Surgery's

---

**1.**  Of those 118 documents, 117 of them had been produced by Cardiac Surgery and one had been produced by MidAtlantic.

**2.**  It is unclear how the parties gained control of the documents; however, employees of both Cardiac Surgery and MidAtlantic had access to many of the documents because they had participated in the peer review process of the medical review committees at St. Joseph.  In fact, Dr. Garth McDonald, Cardiac Surgery's president, served as chief of the division of cardiac surgery at St. Joseph and wrote or received many of the contested documents in that capacity.

possession were not protected by the medical review committee privilege under § 1–401(d) of the Health Occupations Article. St. Joseph then withdrew its claim of privilege as to 5 of the disputed documents, in which the names of its patients had been redacted. Therefore, there are 14 of the documents in Cardiac Surgery's possession which have remained at issue. In addition to these 14 documents, the Circuit Court ordered that St. Joseph produce other documents, namely

"all of the documents contained in [St. Joseph's] 'privilege log,' . . . which are labeled 'peer review,' or 'utilization' are discoverable as they do not come within the meaning of medical review committee materials as meant by the Maryland legislature for reasons discussed below."

The Circuit Court, in an accompanying opinion, explained its order as follows (emphasis in original):

"In its ruling this Court is fully cognizant and respectful of the need and purpose underlying the medical review committee privilege as codified in Maryland Health Occupations Article, § 1–401 (2002). That purpose is to 'ensure a high quality of peer review activity leading to the primary goal . . . to provide better health care.' *Unnamed Physician v. Committee [Commission] on Medical Discipline,* 285 Md. 1 [400 A.2d 396] (1979). * * * Nevertheless, the Court finds that the materials that [St. Joseph] seeks to protect are not materials instituted by an act of a *committee* for the purpose intended by the statute. These materials are emails, letters, correspondences, and testimony of certain hospital staff, mostly nurses, regarding incidents they had personally witnessed and issues they feel should be addressed or investigated. There has been no indication that these materials are the result of or involved in such an investigation by a peer review or medical review committee, which would certainly be privileged. These materials are not documented disciplinary records or proceedings or files or notes or minutes of the medical review committee under § 1–401(d) of the statute. Rather, they are themselves observations and concerns, as yet not proven to be true, that tend to show that certain conduct of Defendant [in the

unfair competition litigation], namely patient diversion and self-referral, might not be in a patient's best interest, and more important, that may be unlawful. Additionally, the material is directly relevant to the allegations made by Plaintiff [Cardiac Surgery], namely that Defendant [is] intentionally engaging in unfair competition, and are not materials intended to publicly disparage, or call into question, a doctor's medical ability. Therefore, their discoverability will have no chilling effect on the purpose of the privilege.

"This Court agrees with the reasoning of the United States District Court for the District of Maryland, which found that Maryland's medical review committee privilege did not apply to a federal antitrust claim because 'the driving force behind the federal antitrust laws—free competition, outweigh the policies underlying the privilege.' *Price v. Howard County General Hospital,* 950 F.Supp. 141 (1996). Maryland's unfair competition laws are akin to the federal laws and attempt to enforce the same policy, preserving free competition. In this case, the Court finds that the policy of lawful competition outweighs the policy of the privilege."

St. Joseph noted an appeal to the Court of Special Appeals, challenging the Circuit Court's order with regard to the 14 documents in Cardiac Surgery's possession and with regard to the other documents listed in the privilege log which the Circuit Court held were discoverable. The Court of Special Appeals initially ordered that St. Joseph produce for the appellate court the documents at issue, but the appellate court later rescinded this order. Cardiac Surgery filed a motion to dismiss the appeal, arguing that the trial court's order was not appealable as a final judgment and that it did not fall within the collateral order doctrine. In its motion, Cardiac Surgery asserted that the only way for St. Joseph to appeal such an order would be to refuse to comply with the order and then be adjudicated in contempt of court. In its response, St. Joseph argued that a finding of contempt was not necessary to trigger its right to appeal the Circuit Court's order and that the order

was appealable as a final judgment under this Court's decision in *Department of Social Services v. Stein,* 328 Md. 1, 612 A.2d 880 (1992). The Court of Special Appeals denied the motion to dismiss, without prejudice to the parties' right to reassert the appealability arguments in their briefs.

Before any further proceedings in the Court of Special Appeals, this Court issued a writ of certiorari. *St. Joseph Medical v. Cardiac,* 377 Md. 275, 833 A.2d 31 (2003). The parties in briefs and oral argument, in addition to addressing the merits of the Circuit Court's order, reiterate their contentions with respect to appealability.

## II.

We shall first address Cardiac Surgery's motion to dismiss St. Joseph's appeal.

## A.

As this Court has emphasized on numerous occasions, very recently by Judge Raker for the Court in *Nnoli v. Nnoli,* 389 Md. 315, 323, 884 A.2d 1215, 1219 (2005), "[t]he general rule as to appeals is that, subject to a few, limited exceptions, a party may appeal only from a final judgment." *See* Maryland Code (1974, 2002 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings Article. Moreover, under Maryland law, the "few, limited exceptions" to the final judgment rule number only three. Judge Wilner for the Court in *Salvagno v. Frew,* 388 Md. 605, 615, 881 A.2d 660, 666 (2005), explained:

"[W]e have made clear that the right to seek appellate review of a trial court's ruling ordinarily must await the entry of a final judgment that disposes of all claims against all parties, and that there are only three exceptions to that final judgment requirement: appeals from interlocutory orders specifically allowed by statute; immediate appeals permitted under Maryland Rule 2–602; and appeals from interlocutory rulings allowed under the common law collateral order doctrine."

*See, e.g., Board of Education v. Bradford,* 387 Md. 353, 382–386, 875 A.2d 703, 720–723 (2005); *In re Billy W.,* 386 Md. 675, 688–692, 874 A.2d 423, 430–434 (2005); *Smith v. Lead Industries,* 386 Md. 12, 21–23, 871 A.2d 545, 550–551 (2005); *In re Samone H.,* 385 Md. 282, 297–298, 869 A.2d 370, 378–379 (2005); *Edwards v. Corbin,* 379 Md. 278, 286 n. 4, 841 A.2d 845, 850 n. 4 (2004); *Frase v. Barnhart,* 379 Md. 100, 115, 840 A.2d 114, 122–123 (2003); *Dawkins v. Baltimore City Police Department,* 376 Md. 53, 58, 827 A.2d 115, 117–118 (2003); *Montgomery Co. v. Stevens,* 337 Md. 471, 476–477, 654 A.2d 877, 879–880 (1995); *Public Service Comm'n v. Patuxent Valley,* 300 Md. 200, 207, 477 A.2d 759, 763 (1984).

Cardiac Surgery, in arguing that the Circuit Court's decision is not appealable by St. Joseph, views the Circuit Court's order as if it were solely an interlocutory discovery order in the underlying unfair competition tort case. Thus, according to Cardiac Surgery, the order is not appealable as a final judgment and does not fall within any statute permitting interlocutory appeals. Cardiac Surgery maintains that the sole argument for appealability would be the collateral order doctrine, but that "the elements of the collateral order doctrine are not established." (Cardiac Surgery's brief at 2).

If this discovery dispute were only between parties to the underlying unfair competition action, we would agree with Cardiac Surgery that no party to that action could take an immediate appeal from the discovery order. Under such circumstances, the order would be entirely interlocutory, and any appeal challenging the order would have to be by an aggrieved party after the final judgment terminating the unfair competition action in the trial court.

### B.

■ Furthermore, Cardiac Surgery correctly argues that the Circuit Court's order is not appealable under the collateral order doctrine. That doctrine is inapplicable in this case.

■ The collateral order doctrine allows, under extremely limited circumstances, an appeal from a trial court's interlocu-

tory order by a party aggrieved by that order. The doctrine was summarized in *Nnoli v. Nnoli, supra,* 389 Md. at 329, 884 A.2d at 1223, as follows:

> "The collateral order doctrine treats as final and appealable interlocutory orders that (1) conclusively determine the disputed question; (2) resolve an important issue; (3) resolve an issue that is completely separate from the merits of the action; and (4) would be effectively unreviewable on appeal from a final judgment. *Dawkins v. Baltimore Police,* 376 Md. 53, 58, 827 A.2d 115, 118 (2003). The collateral order doctrine is a very narrow exception to the final judgment rule, and each of its four requirements is very strictly applied in Maryland. *Id.* at 58–59, 827 A.2d at 118. In particular, the fourth prong, unreviewability on appeal, 'is not satisfied except in "extraordinary situations." ' *Shoemaker v. Smith,* 353 Md. 143, 170, 725 A.2d 549, 563 (1999) (quoting *Bunting v. State,* 312 Md. 472, 482, 540 A.2d 805, 809 (1988)). . . . ."

The collateral order doctrine was further described in *Dawkins v. Baltimore City Police Department, supra,* 376 Md. at 64, 827 A.2d at 121 (footnote omitted):

> "The collateral order doctrine is based upon a judicially created fiction, under which certain interlocutory orders are considered to be final judgments, even though such orders clearly are *not* final judgments. The justification for the fiction is a perceived necessity, in 'a very few . . . extraordinary situations,' for immediate appellate review." Quoting *Bunting v. State,* 312 Md. 472, 482, 540 A.2d 805, 809 (1988).

*See also, e.g., In re Foley,* 373 Md. 627, 634, 820 A.2d 587, 591 (2003) ("[I]n Maryland the four requirements of the collateral order doctrine are very strictly applied, and appeals under the doctrine may be entertained only in extraordinary circumstances"); *In re Franklin P.,* 366 Md. 306, 327, 783 A.2d 673, 686 (2001) ("The four elements of the test are conjunctive in nature and . . . each of the four elements must be met"); *Pittsburgh Corning v. James,* 353 Md. 657, 660–661, 728 A.2d

210, 211–212 (1999); *Shoemaker v. Smith,* 353 Md. 143, 169, 725 A.2d 549, 563 (1999).

It is firmly settled in Maryland that, except in one very unusual situation, interlocutory discovery orders do not meet the requirements of the collateral order doctrine and are not appealable under that doctrine. Most discovery orders do not comply with the third requirement of the collateral order doctrine, as they generally are not completely separate from the merits of the lawsuit. Instead, "a typical discovery order [is] aimed at ascertaining critical facts upon which the outcome of the ... controversy might depend." *In re Foley, supra,* 373 Md. at 635, 820 A.2d at 587. In addition, discovery orders fail to meet the collateral order doctrine's fourth element, as they are effectively reviewable on appeal from a final judgment. *In re Foley, ibid.* A party aggrieved by a discovery order and aggrieved by the final judgment may challenge the discovery ruling on appeal from the final judgment. Furthermore, discovery orders rarely involve an "extraordinary situation" which is part of the collateral order doctrine's fourth element. *Foley,* 373 Md. at 636, 820 A.2d at 593.

As this Court concluded in the *Foley* opinion, 373 Md. at 636, 820 A.2d at 592–593,

"we have made it clear that discovery orders are only rarely appealable under the collateral order doctrine. The only circumstance in which we have upheld the appealability of interlocutory discovery orders involves a singular situation far removed from the facts of the instant case. *Montgomery Co. v. Stevens, supra,* 337 Md. 471, 654 A.2d 877; *Public Service Comm'n v. Patuxent Valley, supra,* 300 Md. 200, 477 A.2d 759."

*See also Goodwich v. Nolan* 343 Md. 130, 141 n. 8, 680 A.2d 1040, 1045 n. 8 (1996) ("In Maryland, 'discovery orders, being interlocutory in nature, are not ordinarily appealable prior to a final judgment terminating the case' "); *Department of Social Services v. Stein, supra,* 328 Md. at 7, 612 A.2d at 883 ("[T]he order from which it has appealed is a discovery order, which normally is interlocutory and, consequently, nonappealable");

*Price v. Orrison,* 261 Md. 8, 9, 273 A.2d 183, 184 (1971) (Order denying "several motions to prevent the taking of depositions" was "interlocutory in nature and not falling within one of the statutory categories of appealable non-final orders;" thus the appeal was dismissed).

The "singular situation," [3] in which this Court has held that interlocutory discovery orders are appealable under the collateral order doctrine, involves trial court orders permitting the depositions of high level governmental decision makers for the purpose of " 'extensive[ly] probing ... their individual decisional thought processes.' " *Montgomery Co. v. Stevens, supra,* 337 Md. at 479, 654 A.2d at 881, quoting *Public Service Comm'n v. Patuxent Valley, supra,* 300 Md. at 207, 477 A.2d at 763. The order in the present case obviously does not fall within this category.

## C.

Our conclusion that the Circuit Court's discovery order is not appealable under the collateral order doctrine, however, does not end the question of appealability.

■ Although the discovery order was interlocutory with regard to the underlying unfair competition litigation and the parties to that case, the order was not interlocutory with regard to St. Joseph. St. Joseph is not a party to the unfair competition case and would have no standing to challenge the discovery order by appealing from a final judgment in that case. *See Lopez–Sanchez v. State,* 388 Md. 214, 224, 879 A.2d 695, 701 (2005)("A salient feature of [the general appeals] statute[ ] is that the grant of appellate rights extends only to parties"). The only proceeding in which St. Joseph is a party is the "motion for a protective order" proceeding pursuant to Maryland Rule 2–403.[4] The Circuit Court's order finally

---

3. *In re Foley, supra,* 373 Md. at 636, 820 A.2d at 593.

4. Rule 2–403 provides as follows (emphasis added):

"**Rule 2–403. Protective orders.**

terminated that proceeding adversely to St. Joseph. Analytically, and under our cases, the order was final as to St. Joseph and was appealable by St. Joseph as a final judgment. Under the circumstances here, and unlike the law in some other jurisdictions, Maryland law does not require a person or entity in St. Joseph's position to refuse compliance with the court's order, and be held in contempt, in order to challenge on appeal the adverse order.

*Department of Social Services v. Stein, supra,* 328 Md. 1, 612 A.2d 880, is factually similar to the case at bar and very much on point. In *Stein,* there was pending in the Circuit Court for Baltimore City a tort action brought by tenants of residential property against their landlord, seeking damages for injuries to the tenants' child caused by lead paint poisoning. The defendant landlord had a subpoena issued to the Baltimore City Department of Social Services, seeking records of the Department relating to welfare payments to the plaintiffs and other records relating to the plaintiffs. The Baltimore City Department of Social Services was not a party to the underlying tort action. The Department filed in the

---

(a) **Motion.**–On motion of a party *or of a person from whom discovery is sought,* and for good cause shown, the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had, (2) that the discovery not be had until other designated discovery has been completed, a pretrial conference has taken place, or some other event or proceeding has occurred, (3) that the discovery may be had only on specified terms and conditions, including an allocation of the expenses or a designation of the time or place, (4) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery, (5) that certain matters not be inquired into or that the scope of the discovery be limited to certain matters, (6) that discovery be conducted with no one present except persons designated by the court, (7) that a deposition, after being sealed, be opened only by order of the court, (8) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way, (9) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

(b) **Order.**–If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery."

Circuit Court a motion for a protective order, asserting that the records sought were confidential and protected by privilege. The Circuit Court denied the motion for a protective order, and the Department appealed. The appellee Stein, arguing for the dismissal of the appeal, "question[ed] whether the order has the requisite finality since the appellant has not been held in contempt." *Stein,* 328 Md. at 8, 612 A.2d at 883.

This Court in *Stein,* in an opinion by Judge Bell, pointed out that the federal cases, since the decision in *Alexander v. United States,* 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), would support the position of the appellee Stein and would require that one in the Department's position be held in contempt in order to challenge the order on appeal. The Court in *Stein* went on to point out that "[w]e have declined to follow the *Alexander* rule," *Stein,* 328 Md. at 16, 612 A.2d at 887, and that "[t]he appellant's right to appeal is not dependent upon its being held in contempt." 328 Md. at 21, 612 A.2d at 891. In holding that the Department could appeal the order, the Court in *Stein* stated (328 Md. at 13, 612 A.2d at 886):

> "With regard to the appellant and the appellee, the ruling has all of the attributes of finality recognized by this Court; it settles the rights of the appellant and the appellee in the records sought to be discovered.... The discovery order in this case determined and concluded the appellant's rights and interests in the discovery issue and denied it the means of further prosecuting or defending them."

In situations where the aggrieved appellant, challenging a trial court discovery or similar order, is not a party to the underlying litigation in the trial court, or where there is no underlying action in the trial court but may be an underlying administrative or investigatory proceeding, Maryland law permits the aggrieved appellant to appeal the order because, analytically, it is a final judgment with respect to that appellant. *See, e.g., State Prosecutor v. Judicial Watch,* 356 Md. 118, 126, 737 A.2d 592, 596 (1999) (This Court pointed out that the order in the *Stein* case was appealable because the

appellant "was a non-party to the underlying action, as to whom the discovery disclosure order had all the attributes of finality recognized by this Court"); *Unnamed Attorney v. Attorney Grievance Comm'n,* 303 Md. 473, 480, 494 A.2d 940, 944 (1985)("We have rejected the argument that, in this situation, one must be adjudged in contempt of the court order in order to obtain appellate review"); *In re Special Investigation No. 231,* 295 Md. 366, 370, 455 A.2d 442, 444 (1983); *In re Special Investigation No. 185,* 293 Md. 652, 655–656 n. 2, 446 A.2d 1151, 1154 n. 2 (1982); *Fred W. Allnutt, Inc. v. Comm'r, Labor & Industry,* 289 Md. 35, 41, 421 A.2d 1360, 1363 (1980).

Consequently, St. Joseph was entitled to appeal the Circuit Court's order. The Court of Special Appeals correctly denied Cardiac Surgery's motion to dismiss the appeal, and we shall do likewise.[5]

## III.

### A.

The medical review committee privilege statute was first enacted by Ch. 722 of the Acts of 1976, and codified as Maryland Code (1957, 1971 Repl.Vol., 1976 Supp.), Art. 43, § 134A(d). In 1981, as part of the general re-codification of some of the statutes relating to health matters, the medical review committee privilege was re-codified, by Ch. 8 of the Acts of 1981, as § 14–601(d) and (e) of the Health Occupations Article. According to the Revisor's Note, the 1981 re-codification was "without substantive change from Art. 43, § 134A." *See* Laws of Maryland 1981 at 605.

From 1976 until October 1, 1997, the critical language of the medical review committee privilege remained unchanged. It

---

5. Cardiac Surgery also argues that St. Joseph lacked standing in the Circuit Court to file a motion for a protective order under Rule 2–403. Cardiac Surgery contends that St. Joseph was neither "a party" nor "a person from whom discovery is sought" within the language of the Rule. In our view, St. Joseph qualified as a person from whom discovery was sought within the intent of the Rule.

provided that "the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action *arising out of matters that are being reviewed and evaluated by the medical review committee.*" (Emphasis added). By Ch. 696 of the Acts of 1997, effective October 1, 1997, the above-quoted italicized limitation was deleted so that the privilege applied "in any civil action" without limitation.

As a result of subsequent re-numbering of sections of the Health Occupations Article, the medical review committee privilege is now codified as § 1–401(d) and (e) of the Health Occupations Article. The pertinent language of § 1–401(d) and (e) is as follows:

"(d) *Proceedings, records, and files confidential and not admissible or discoverable.*—(1) Except as otherwise provided in this section, the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action."

\* \* \*

"(e) *Same—Exceptions.*—Subsection (d)(1) of this section does not apply to:

(1) A civil action brought by a party to the proceedings of the medical review committee who claims to be aggrieved by the decision of the medical review committee; or

(2) Any record or document that is considered by the medical review committee and that otherwise would be subject to discovery and introduction into evidence in a civil trial."

In *Unnamed Physician v. Comm'n,* 285 Md. 1, 12, 400 A.2d 396, 402 (1979), Judge Cole for the Court indicated that the privilege would apply to "the matters reviewed by a medical review committee" if the materials were sought in an action like "a tort action for medical malpractice." With regard to the overall purpose of the privilege, Judge Cole continued (285 Md. at 13, 400 A.2d at 403):

"A ... fundamental reason for preserving confidentiality in these proceedings is to ensure a high quality of peer review activity leading to the primary goal of this legislation—to provide better health care."

The medical review committee privilege was again considered by this Court in *Baltimore Sun v. University of Maryland Medical System,* 321 Md. 659, 584 A.2d 683 (1991). This Court's opinion in *Baltimore Sun,* written by Chief Judge Murphy, reiterated what was said in the *Unnamed Physician* case, and reviewed with approval numerous authorities emphasizing the importance and broad scope of the privilege (321 Md. at 666–667, 584 A.2d at 686–687):

"The statutory protection afforded medical review committee records by § 14–601(d) [now § 1–401(d) ] is seemingly premised upon and consistent with the view expressed in Comment, *The Medical Review Committee Privilege: A Jurisdictional Survey,* 67 N.C.L.Rev. 179, at 179 (1988): '[P]hysicians are frequently reluctant to participate in peer review evaluations for fear of exposure to liability, entanglement in malpractice litigation, loss of referrals from other doctors, and a variety of other reasons. To combat this reluctance and to enhance the improvement of medical care services, at least forty-six states now have statutes that protect the work of medical review committees.' Another commentator noted that the major purpose behind the medical review committee privilege is to permit the committee to work in a confidential setting in which individual members may engage in a candid and conscientious evaluation of clinical practices within the institution. *See* Hall, *Hospital Committee Proceedings and Reports: Their Legal Status,* 1 Am.J.L. & Med. 245, 25A–54 (1975). Statutory protection of peer review activities is supported by the notion that they result in increased peer review activity and that such activity improves medical care. Comment, *Medical Peer Review Protection in the Health Care Industry,* 53 Temple L.Q. 552 (1979).

"Courts in other states, in construing their own statutes have held that confidentiality is essential to the proper

functioning of medical review committees. For example, in *Jenkins v. Wu,* 102 Ill.2d 468, 82 Ill.Dec. 382, 468 N.E.2d 1162, *supra* (1984), the court held that an exception in the Illinois medical review committee statute which granted a physician access to otherwise confidential materials in the 'limited circumstances of a hospital proceeding to decide upon a physician's staff privileges or in any judicial review thereof,' *id.,* 82 Ill.Dec. at 387, 468 N.E.2d at 1167 (citation omitted), did not open the door for discovery of those same documents in malpractice cases."

The *Baltimore Sun* opinion continued (321 Md. at 668, 584 A.2d at 687):

"We think it readily apparent that the statutory protection thereby afforded by § 14–601(d) is premised upon legislative appreciation that a high level of confidentiality is necessary for effective medical peer review. By protecting these records from public access in those situations covered by § 14–601(d), the legislature recognized that a system of effective medical peer review outweighs the need for complete public disclosure."

## B.

Turning to the case at bar, the issue and arguments before the Circuit Court exclusively concerned the meaning and scope of the basic privilege language in § 1–401(d)(1), which states that "the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action." No party in the Circuit Court raised any issue with regard to the "exceptions" contained in § 1–401(e), and the trial judge did not consider subsection (e).

The Circuit Court, in its opinion accompanying the order, gave two reasons for deciding that the "emails, letters, correspondences, and testimony of certain hospital staff, mostly nurses," to a medical review committee, were not privileged under the language of § 1–401(d)(1). First, the Circuit Court held that the privilege protected only materials generated by the committee, *i.e.* in the court's language, "materials institut-

ed by an act of a *committee*." Second, the Circuit Court alternatively held that, even if the privilege were otherwise applicable, "the policy of lawful competition outweighs the policy of the privilege." As previously mentioned, the court, as did Cardiac Surgery, relied on *Price v. Howard County General Hospital, supra,* 950 F.Supp. 141, in support of this position.

We disagree with both reasons advanced by the Circuit Court.

Nothing in the language of § 1–401(d)(1) supports the position of the Circuit Court and Cardiac Surgery that only documents generated by the medical review committee itself are privileged, and that written statements and testimony submitted to the committee by nurses, physicians, or other hospital staff, concerning incidents involving physicians which staff members believe should be investigated or addressed by the committee, are not privileged. The critical statutory language is "the proceedings, records, and files of a medical review committee." The words "records" and "files" are broad. A letter or testimony by a nurse to a review committee concerning an incident involving a physician, which is considered by the committee and may have resulted in a committee investigation or inquiry, would normally become part of the committee's "record" or "file" regarding the matter. The plain language of the statute is inconsistent with the Circuit Court's interpretation.

The Circuit Court's and Cardiac Surgery's interpretation of the statute would require the insertion, after the statutory phrase "records, and files of a medical review committee," of the words "generated by the medical review committee." This Court, however, has repeatedly stated that "[w]e will not . . . 'judicially insert language [into a statute] to impose exceptions, limitations, or restrictions not set forth by the legislature." *O'Connor v. Baltimore County,* 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004), quoting *Langston v. Langston,* 366 Md. 490, 515, 784 A.2d 1086, 1100 (2001). *See e.g., Lee v. Cline,* 384 Md. 245, 257, 863 A.2d 297, 304 (2004); *Melton v. State,*

379 Md. 471, 477, 842 A.2d 743, 746 (2004) ("[W]e will not add or delete words from the statute"). Neither the language nor the purpose of § 1–401(d)(1) supports, the Circuit Court's and Cardiac Surgery's view of the statute.

Furthermore, nothing in the Department of Legislative Reference's bill file concerning Ch. 722 of the Acts of 1976 which originally enacted the privilege, or in subsequent legislative history associated with amendments to the privilege, suggests that the privilege is limited to documents generated by the medical review committee itself. The Department of Legislative Reference's bill file on Ch. 696 of the Acts of 1997, which broadened the privilege, is quite extensive, consisting of committee reports, testimony supporting the bill, and other documents. There is no indication in any of this material that the privilege attaches only to "acts" of a committee and excludes statements made to a committee. On the contrary, the reports and testimony underscore the breadth, need, and importance of the privilege.

Although most states have statutes creating a medical review committee privilege, the wording of the statutes varies considerably. Furthermore, there are only a limited number of state supreme court decisions dealing with the issue now before us, under statutes with the same or similar wording to that contained in § 1–401(d). For a general review of state statutes and judicial decisions, *see* Charles David Creek, *The Medical Review Committee Privilege: A Jurisdictional Survey,* 67 N.C.L.Rev. 179 (1988); Susan O. Schentzow and Sylvia Lynn Gillis, *Confidentiality and Privilege of Peer Review Information: More Imagined Than Real,* 7 Journal of Law and Health 169 (1993).

One case very much on point is *Cruger v. Love,* 599 So.2d 111 (Florida 1992). The section granting a privilege in Florida's medical review committee statute is worded like § 1–401(d)(1) of the Maryland statute, and in *Cruger,* 599 So.2d at 113, the party seeking to discover documents argued that they were not privileged because they were "not generated by the

committee...." In rejecting the argument, the Supreme Court of Florida held as follows (599 So.2d at 113–114):

"The statutes do not define what constitutes records of a committee or board. Therefore, we must look to the legislative intent and policy behind the statutes to determine the extent of the privilege. See *White v. Pepsico, Inc.,* 568 So.2d 886, 889 (Fla.1990); *Devin v. City of Hollywood,* 351 So.2d 1022, 1023 (Fla.[App.]1976). We have previously held that '[t]he discovery privilege ... was clearly designed to provide that degree of confidentiality necessary for the full, frank medical peer evaluation which the legislature sought to encourage.' *Holly v. Auld,* 450 So.2d at 220. Without the privilege, information necessary to the peer review process could not be obtained. *Feldman v. Glucroft,* 522 So.2d 798, 801 (Fla.1988). While we recognized in *Holly* that the discovery privilege would impinge upon the rights of litigants to obtain information helpful or even essential to their cases, we assumed that the legislature balanced that against the benefits offered by effective self-policing by the medical community. *Holly,* 450 So.2d at 220.

"We hold that the privilege provided by sections 766.101(5) and 395.011(9), Florida Statutes, protects any document considered by the committee or board as part of its decision-making process. The policy of encouraging full candor in peer review proceedings is advanced only if all documents considered by the committee or board during the peer review or credentialing process are protected. Committee members and those providing information to the committee must be able to operate without fear of reprisal. Similarly, it is essential that doctors seeking hospital privileges disclose all pertinent information to the committee. Physicians who fear that information provided in an application might someday be used against them by a third party will be reluctant to fully detail matters that the committee should consider."

*See, also, e.g., McGee v. Bruce Hospital System,* 312 S.C. 58, 62, 439 S.E.2d 257, 260 (1993) ("We interpret the legislative intent to protect not only documents generated by the commit-

tee, but also documents acquired by the committee in the course of its proceedings").

The above-quoted holdings could also be applied to § 1–401(d)(1) of the Maryland statute. In light of the wording and purpose of § 1–401(d)(1), the basic coverage of the privilege statute is not limited to documents generated by a medical review committee itself.

The Circuit Court's alternative position, that the Maryland policy underlying an "unfair competition" tort case "outweighs the policy of the privilege," and the court's reliance on *Price v. Howard County General Hospital, supra,* 950 F.Supp. 141, were also clearly in error. The *Price* case was an action under the federal antitrust statutes, where "federal," not Maryland, "law of privileges [was] applicable," and thus "the Maryland medical peer review privilege [was] not controlling." *Price,* 950 F.Supp. at 142–143. As a matter of *federal* law, the policy of "the federal antitrust laws" was held to "outweigh the policies underlying the state privilege." *Price,* 950 F.Supp. at 143.

The present case, on the other hand, involves exclusively Maryland law and Maryland policy. The "weighing" was done by the Maryland General Assembly, which decided that, where the privilege was applicable, it outweighed the need for the privileged material "in any civil action." § 1–401(d)(1). *See Baltimore Sun v. University of Maryland Medical System, supra,* 321 Md. at 668, 584 A.2d at 687 ("[T]he legislature recognized that a system of effective medical peer review outweighs the need for ... disclosure").

The expansion of the privilege, by Ch. 696 of the Acts of 1997, is particularly instructive in this regard. As earlier discussed, prior to 1997 the privilege only applied in a "civil action arising out of matters that are being reviewed and evaluated by the medical review committee." The 1997 change, however, extended the privilege to "any civil action." Certainly, a Maryland tort action based on alleged unfair competition and interference with economic relations falls within the statutory phrase "any civil action." The Floor

Report by the House Environmental Matters Committee on House Bill 775 of the 1997 General Assembly session, which bill became Ch. 696, stated as follows (emphasis added):

"Under current law, the proceedings, records, and files of a medical review committee are not admissible in any civil action that arise out of matters that are being reviewed and evaluated by the medical review committee. HB 775 would expand coverage to all types of civil litigation. This is important because a hospital can get subpoenas in divorce actions, *antitrust actions*, car accidents, health insurance disputes, etc. This can make important documents public records and drag doctors into collateral litigation as witnesses."

There is little doubt that the General Assembly intended the privilege to be applicable in Maryland tort actions based on alleged unfair competition.

In sum, the grounds for disallowing the privilege advanced by Cardiac Surgery in the trial court, and accepted by the trial court, are erroneous and do not support the trial court's order.

### C.

Cardiac Surgery, for the first time in its brief in this Court, relies on the exception to the privilege set forth in § 1–401(e)(2), which provides (emphasis added):

"Subsection (d)(1) of this section does not apply to:

\* \* \*

(2) Any record or document that is considered by the medical review committee and that *otherwise* would be subject to discovery and introduction into evidence in a civil trial."

Cardiac Surgery, in this Court, contends that § 1–401(e)(2) supports its argument that only materials generated by a medical review committee fall within the privilege set forth in § 1–401(d)(1).

As indicated above, no issue concerning § 1–401(e)(2) was raised in the trial court or considered by the trial judge. Furthermore, although the "privilege log" is contained in the record extract, none of the disputed documents themselves are before us. Accordingly, it would be difficult for this Court to finally decide anything regarding the specific disputed documents, other than our holdings, as set forth above, that the two grounds relied on by the trial court are erroneous and, therefore, do not support the trial court's order. Nevertheless, "to guide the trial court" and "to avoid the expense and delay of another appeal" (Rule 8–131(a)), we shall comment on the applicability of § 1–401(e)(2).

This Court in *Baltimore Sun v. University of Maryland Medical System, supra,* 321 Md. 659, 584 A.2d 683, previously commented on the exception now set forth in § 1–401(e)(2), and then codified as § 14–601(e)(2). Chief Judge Murphy for the Court there stated (321 Md. at 665, 584 A.2d at 686):

"The subsequent recodification of these provisions as § 14–601(d) and (e)(1) and (2) was accomplished by ch. 8 of the Acts of 1981. According to the 'Revisor's Note,' the recodification was without substantive change from former Article 43, § 134A.[3]

---

[3] Somewhat cryptically, the Revisor's Note appended to § 14–601 'calls to the attention of the General Assembly that present Art. 43, § 134A(d) states in its first sentence that certain documents are privileged from discovery and admission into evidence and then in its third sentence provides for an exception that seemingly is as broad as the privilege. The revised language in this section closely follows the present law. However, the Commission believes that present Art. 43, § 134A(d), and, in turn, this section, may not state the intent of the General Assembly.' "

There appears to be no additional legislative history, either in 1976 or 1981 or later, which casts any light on the General Assembly's intent concerning this exception.

As pointed out by the Revisor in 1981, a broad literal reading of the exception would do away with the privilege. Such an interpretation would be unreasonable and would violate the principle that statutes should not, if possible, be given an unreasonable interpretation.

The only indication of § 1–401(e)(2)'s meaning is found in judicial opinions from other states. Similar language has been interpreted to mean that, although a party to a lawsuit cannot get the documents from the hospital of which the review committee is a part, nevertheless if such documents are otherwise properly available from other sources and otherwise admissible, the party may obtain them from such other sources. The fact that they are also in a medical review committee's file does not preclude obtaining them from other sources. *See, e.g., Sun Health Corp. v. Myers*, 205 Ariz. 315, 320, 70 P.3d 444, 449 (2003) ("The plaintiff can seek information outside the review process and information from the original sources including court records," etc.); *Yuma Regional Medical Center v. Superior Court*, 175 Ariz. 72, 76, 852 P.2d 1256, 1260 (1993) ("As plaintiffs note, the peer review privilege does not protect information that originated outside the peer review process and that is discoverable from alternative sources"); *Munroe Regional Medical Center v. Rountree*, 721 So.2d 1220, 1223 (Fla.App.1998) ("[I]f available from original sources other than the committee, such information is discoverable"); *Hollowell v. Jove*, 247 Ga. 678, 682, 279 S.E.2d 430, 434 (1981) ("We must note, however, that 'information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such civil action merely because they were presented during proceedings of such committee' "); *Virmani v. Presbyterian Health Services Corp.*, 350 N.C. 449, 468, 515 S.E.2d 675, 688 (1999) (" 'These provisions mean that information, in whatever form available, from original sources other than the medical review committee is not immune from discovery or use at trial merely because it was presented during medical review committee proceedings,' " quoting *Shelton v. Morehead Memorial Hospital*, 318 N.C. 76, 83, 347 S.E.2d 824, 829 (1986)); *Claypool v. Mladineo*, 724 So.2d 373, 383 (Miss.1998) ("The ... statute ... provided that the privilege did not extend to information that originated outside the peer review process"); *Moretti v. Lowe*, 592 A.2d 855, 858 (R.I.1991) (The statute "does not render immune information otherwise avail-

able from original sources even if the information was presented at a peer-review committee meeting"); *McGee v. Bruce Hospital System, supra,* 312 S.C. at 62–63, 439 S.E.2d at 260 ("Hence, the plaintiff seeking discovery cannot obtain documents which are available from the original source directly from the hospital committee, but may seek them from alternative sources"); *Anderson v. Breda,* 103 Wash.2d 901, 906, 700 P.2d 737, 741 (1985) ("Petitioners are not deprived of the opportunity to develop [information] through sources other than the records of the committee").

Absent any additional discovery of legislative intent regarding § 1–401(e)(2), or subsequent legislative clarification, the Circuit Court on remand should apply the exception in accordance with the above principles.[6] Under those principles, it would seem that documents from the records or files of the medical review committee, which are in St. Joseph's possession, would not be discoverable. Whether documents in Cardiac Surgery's possession fall within the exception must be determined by the trial circuit.

Our decision in this case does not go beyond the holding that the two grounds relied upon by the trial court, for deciding that the privilege was inapplicable, are not valid. The trial court on remand will have to again resolve the

---

**6.** House Bill 1035 of the 1976 General Assembly session became Ch. 722 of the Acts of 1976 which initially created medical review committees, provided that material in committee records and files was privileged, and granted immunity from damage suits for committees, members thereof, and persons or organizations providing information to committees. As originally introduced, the language of the exception, which later became § 1–401(e)(2), more clearly reflected the position of the above-cited out-of-state cases as to the exception's meaning. During House Bill 1035's journey through the General Assembly, the subsections relating to privilege and immunity from suit were entirely re-written. The final wording of the exception is essentially the same as the present wording of § 1–401(e)(2). While there is a Department of Legislative Reference file on House Bill 1035, it contains very little material and fails to explain why the language of the exception was changed. Whether the change was intended to be simply stylistic or, on the other hand, was intended to be substantive, is a mystery. Absent any indication of legislative intent to the contrary, we shall, as indicated above, assume that the change was simply stylistic.

discovery disputes in accordance with the principles set forth in this opinion.

*MOTION TO DISMISS DENIED. JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED, AND CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENT CARDIAC SURGERY ASSOCIATES, P.A.*